S. A. HEDRICK, Appellant, *vs.* M. C. DONOVAN *et al.*
Appellees.

*Opinion filed February 25, 1911.*

1. CONTRACTS—*when a contract creating agency to sell land is not void because premises are occupied as homestead.* Where a contract authorizing an agent to sell land is signed by both husband and wife, the fact that the land is occupied as their homestead does not render the contract void, and in case of a sale by the agent in accordance with the terms of the contract the husband and wife are bound to execute a proper deed, including the release of homestead.

2. SAME—*intention of parties as expressed in agency contract controls.* The general rule that the intention of the parties as expressed by their written agreement must control is applicable to contracts appointing agents in connection with sale of real estate.

3. SAME—*when contract authorizes agent to make a valid contract of sale.* A written contract "for the sole purpose of selling and transferring" certain land, by which the owner reserves the right to sell the land himself but agrees to pay the agent commissions if the land is sold by the agent or by his influence, contemplates that the land may be sold by the agent and authorizes such agent to make a valid contract of sale. (*Jones* v. *Howard,* 234 Ill. 404, distinguished.)

4. SAME—*parol evidence is admissible to identify subject matter of contract.* Wherever the language used in a written contract may apply indifferently to different things, it is competent to show by parol evidence what the parties were, in fact, contracting about; and this rule applies to contracts for the sale of real estate, even where the Statute of Frauds has been pleaded.

5. SPECIFIC PERFORMANCE—*when specific performance should not be denied.* If the contract executed by an agent for the sale of real estate accurately described the land, the mere fact that the description contained in the contract giving the agent his authority was so indefinite as to require extrinsic evidence to identify the land is not ground for denying specific performance, there being no question of any misunderstanding by the parties as to the land intended to be sold.

DUNN, HAND and CARTER, JJ., dissenting.

APPEAL from the Circuit Court of Richland county; the Hon. E. E. NEWLIN, Judge, presiding.

H. G. MORRIS, and EDWIN HEDRICK, (GUERIN, GAL-
LAGHER & BARRETT, of counsel,) for appellant.

JOHN A. MACNEIL, for appellees.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of
the court:

This is an appeal from the circuit court of Richland
county dismissing for want of equity a bill filed in that
court by Samuel Hedrick against M. C. and Susan E. Don-
ovan for the specific performance of a contract for the sale
of a farm of 120 acres located in Noble township, in the
said county.

The alleged contract was entered into by appellant with
appellees through Charles Dickirson, as agent of the own-
ers. The authority of the agent to execute a contract bind-
ing on appellees is the most important question involved in
this controversy. The authority of Dickirson is evidenced
by the following writing:

"Agreement made and entered into this 28th day of May, A. D.
1909, by and between M. C. Donovan and wife, of Richland
county, and State of Illinois, party of first part, and Charles Dick-
irson, of second part, for the sole and only purpose of selling and
transferring certain tract of land situated in the town of Noble,
county of Richland, State of Illinois, hereby reserves the right to
sell said real estate myself, first party, or if sold by second party
or influence of second party, first party to pay second party a com-
mission of three per cent of sales. This agreement to remain in
force for a period of four (4) months, commission to be paid when
deeds are made, bounded as follows, containing 120 acres, more
or less.

"This farm lies in first-class shape in one mile of Noble; build-
ings fair; 25 acres of orchard; plenty of water; mortgage $250;
to price on this farm thirty-five dollars an acre, be paid at any
time after twelve months from January, 1909.

(Seal)                        M. C. DONOVAN,
(Seal)                        SUSAN E. DONOVAN."
(Seal)    40

In pursuance of the foregoing authority Dickirson en-
tered into the following contract of sale with appellant:

"This indenture, made and entered into this 9th day of September, A. D. 1909, by and between Charles Dickirson, agent for Susan E. Donovan and M. C. Donovan, her husband, of the county of Richland and State of Illinois, of the first part, and S. A. Hedrick, of the county of Richland and State of Illinois, of the second part:

"*Witnesseth:* That the said Charles Dickirson, as agent aforesaid, has this day sold to the said S. A. Hedrick the following described real estate, to-wit: The north half (½) of the south-west quarter (¼) and the north half (½) of the south half (½) of the south-west quarter (¼) of section twenty-one (21), township three (3), north, range nine (9), east of the third P. M., Richland county, Illinois, containing one hundred twenty (120) acres, more or less, for the sum of forty-two hundred ($4200) dollars, said payment to be made as follows: $100 paid at the signing of this contract, the balance of the purchase price to be paid on the 15th day of September, A. D. 1909, at the office of R. S. Hanna, in the village of Noble, Illinois. And the said Charles Dickirson, agent as aforesaid, hereby agrees to have executed and delivered to the said S. A. Hedrick a good and valid warranty deed from the said Susan E. Donovan and M. C. Donovan, her husband, conveying to him, the said S. A. Hedrick, the land described above, free and clear from all encumbrances, said deed to be delivered to the said S. A. Hedrick on the 15th day of September, A. D. 1909.

"In witness whereof we have hereunto set our hands and seals the day and year first above written.

CHARLES DICKIRSON, (Seal.)<br>Agent for Susan E. Donovan and M. C. Donovan.<br>Accepted by S. A. HEDRICK. (Seal.)

"Signed, sealed and delivered in presence of R. S. Hanna."

At the time this contract was signed appellant paid Dickirson $100 in cash. Appellees were notified by Dickirson that he had made a sale of the farm to appellant, and Dickirson requested them to come to Noble and make a deed and receive their money. Dickirson and a witness by the name of Palmer testified that they went to appellees' home a few days after the sale contract had been made with appellant; that they did not find appellees at home but met them on the road as they were returning from Noble; that appellees were in a buggy; that Dickirson informed Mr. and Mrs. Donovan that he had found a purchaser for their farm and that he wanted them to come to Noble the fol-

lowing Wednesday to close the deal, and that Mr. Donovan said "all right." Appellees did not go to Noble as requested and refused to carry out the contract, and appellant filed his bill for specific performance. Appellees answered the bill, alleging that the premises in question were their homestead; denied that Dickirson had any authority to execute the contract; charged that the agency contract had been changed in a material particular after it was signed, and relied on the Statute of Frauds. A trial was had upon evidence heard in open court, which resulted in a dismissal of the bill.

The. original agency contract has been duly certified and sent up to this court for our inspection. From an inspection of the original contract signed by appellees it appears that where the price of the farm is mentioned the word "forty" was originally written with a lead pencil and erased and "thirty-five" written in the space between the words "farm" and "dollars," in the last sentence of the contract. To the right of the lower word "Seal," on the lower left-hand corner of the contract, the figures "40" are written in pencil. The contract itself is partly printed and partly written with pencil. The change in the price of the farm from $40 per acre to $35 is satisfactorily explained by the evidence. Dickirson swears that the only price mentioned by appellees at which they were willing to sell was $35 an acre; that when he was drawing the contract he suggested that they put in $40 so as to give him a chance to fall to $35, and that appellees consented, and that in accordance with this understanding he first wrote "forty," and afterwards, and before the contract was signed, he concluded to erase "forty" and put "thirty-five" in the body of the contract and make the figures "40" on the margin, which he did, and that the contract was signed in that condition. The evidence is undisputed that appellees had been anxious to sell the farm in question and had offered to sell it to different persons and $35 was the uniform price that they

wanted for it. Furthermore, it appears from the evidence that when the appellees were tendered $4200 before the bill was filed they made no objection to the amount at which the farm had been sold, but the only reason assigned at that time for refusing to execute the deed was, that they did not want Sam Hedrick to have the farm. The decree dismissing the bill cannot be sustained on the ground that the sale was made at a price lower than that authorized by the agency contract.

The contention of appellees that the contract is void because the premises were occupied as a homestead cannot be sustained. The title was in appellee Susan E. Donovan, and the premises were occupied by her and her husband, M. C. Donovan, as a homestead. Susan E. Donovan signed the agency contract, and if that contract authorized Dickirson to execute a contract for the sale of the premises binding upon appellees, the fact that there was a homestead on the premises would not render the contract void. If the contract Dickirson made was authorized, the appellees would be required to convey the premises and to execute proper deeds for that purpose, including the release of the homestead. The line of cases, like *White* v. *Bates,* 234 Ill. 276, where a contract for the sale of a homestead was entered into by the husband alone, have no application to the situation presented by this record. Here both husband and wife signed the contract and both are equally bound by its terms.

It is suggested that the contract cannot be enforced because of the uncertainty of the description of the premises. This criticism is confined exclusively to the agency contract and not to the contract sought to be enforced by this bill. That contract describes the premises accurately. This objection is hypercritical. While it is true that every valid contract must contain a description of the subject matter, so as to indicate what the parties were contracting about, it is not necessary, even in contracts for the sale of real

estate, that it should be so described as to admit of no doubt as to what it is. The identity of the actual thing and that described in the contract may be shown by extrinsic evidence. Wherever the language used in the contract would apply indifferently to different things, it is competent by extrinsic evidence to show what the parties, in fact, were contracting about. This rule frequently is applied, from necessity, with regard both to persons and things mentioned in wills and in cases of contracts, even where the Statute of Frauds has been pleaded. Parol evidence is admissible to identify the subject matter of the contract. (Fry on Specific Performance, sec. 342.) Thus, for instance, the expression "Mr. Oglesby's house," was held sufficient, and extrinsic evidence was admitted to show what house was there referred to. (*Oglesby* v. *Foljambe*, 3 Mer. 53.) In another case the subject matter described as "the mill property, including cottages in Esher village," was held capable of identification by parol evidence. (Fry on Specific Performance, *supra*.) The description contained in the agency contract was sufficiently certain to enable the parties to identify the premises authorized to be sold, and there never was any question raised by the parties as to the subject matter of this contract. They all understood the particular 120 acres which appellees desired to sell, and it was that particular 120 acres that is accurately described in the sale contract made by appellant.

The only remaining theory upon which the decree can be sustained is that the agency contract did not authorize Dickirson to enter into the contract of sale with appellant. It appears to be conceded that the decree dismissing the bill was the result of the court's view upon this question. Appellees rely with great confidence on the case of *Jones* v. *Howard*, 234 Ill. 404, in support of the decree rendered in the case at bar. It is strenuously contended that the agency contract in the case at bar confers no other or greater authority than did the contract that was under consideration

in the *Jones-Howard case*. This, we think, results from a misapprehension of what was decided in that case. The agent's authority in that case was contained in a letter written by the owner to some real estate brokers. The letter authorized the agents to sell the property and promised to pay them a commission of four per cent of the price mentioned in the letter. In connection with the authority to sell, the letter contained, in its first sentence, the language, "Please assist me to sell my property described below until sale is made and properly closed." In commenting on the significance of the sentence just quoted, this court, on page 409, said: "These words cannot be disregarded in determining the authority conferred by appellee upon T. C. Baker, Jr. & Co., but in determining this question every word and phrase in the letter must be considered and the letter strictly construed and the authority of said firm not extended beyond that clearly found in the letter as a whole."

Contracts appointing agents in connection with the sale of real estate are subject to the general rule applicable to all other contracts,—that the intention of the parties as expressed by their agreement is to control. The application of this rule to the letter of authority in the *Jones-Howard case* led this court to the conclusion that it was not the intention of the parties that the agent should have authority to do more than find a purchaser for the land, leaving the details of the contract to be fixed and determined by the owner; and numerous authorities were cited supporting the general proposition that an agent employed to find a purchaser did not have authority to execute a contract of sale binding upon the owner. The rule announced in that case, when read in connection with the instrument then being considered, is undoubtedly correct, but this court did not there decide that an owner of real estate might not execute an agency contract broad enough in its terms to include the power to make a binding contract of sale. In the case at

bar the authority to the agent, as expressed in the writing, is "for the sole and only purpose of selling and transferring certain tract of land situated in the town of Noble, county of Richland, State of Illinois," etc. There is nothing in the context of the agreement that modifies or restricts the general language of the contract which we have quoted. Appellees reserved the right to sell the property independently of Dickirson, and the agreement then provides that "if sold by second party or influence of second party, first party to pay second party a commission of three per cent of sales." This language clearly indicates that the parties contemplated that the sale might be effected in two ways: First, it might be sold by the agent; and second, the agent might be the means or procuring cause of a sale made by the owner; and in either event the agent would be entitled to his commission. It thus appears clear that the agent was employed not merely to find a purchaser to whom the owner might sell, but he was also further authorized to make a valid contract of sale. This intention not only appears from the unlimited authority to sell and transfer, but is strengthened by the context of the agreement.

It follows from what has been said that the court erred in dismissing appellant's bill.

The decree of the circuit court will be reversed and the cause remanded, with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded, with directions.*

DUNN, HAND and CARTER, JJ., dissenting:

The appellees relied upon the Statute of Frauds. The point seems to us conclusive in their favor. The description contained in the contract of sale is a definite description of a particular tract. But it is as necessary, under the statute, that the authority of the agent should be in writing as that the contract of sale should be. The only words of description in the written authority given to the agent, (which the

majority opinion states to be the most important question involved in this controversy,) are, that the land is "situated in the town of Noble, county of Richland, State of Illinois," contains "120 acres, more or less," and "lies in first-class shape in one mile of Noble; buildings fair; 25 acres of orchard; plenty of water; mortgage $250." The premises are not otherwise located, and the contract does not even state that they are owned by the appellees. This writing is clearly too vague and uncertain in its description of the land to warrant a decree for the specific performance of the contract. In *Hamilton* v. *Harvey*, 121 Ill. 469, the description of the premises was, "one-third interest in five acres located near said works," (being a certain plow factory building at Pacific Junction,) and it was held too indefinite and uncertain to authorize a decree for specific performance. So it was held, also, in *Glos* v. *Wilson*, 198 Ill. 44, where the description was, "lot 56, bl. 12, sec. 7, 39, 14," and in *Rampke* v. *Beuhler*, 203 Ill. 384, where the description was, "four lots, 25 feet by 150 feet deep, in either section 8 or 9, town 36, north, range 14, east, in the third principal meridian, Cook county, Ill."

*Hamilton* v. *Harvey*, *supra*, cites a number of cases in which the description of real estate in a contract was held insufficient to authorize a decree of specific performance. Among them are *Capps* v. *Holt*, 5 Jones' Eq. 153, the description being, "a tract of land lying on the north side of the Watery branch, in the county of . . . . . . . and State of . . . . . . . containing 150 acres;" *Jordan* v. *Fay*, 40 Me. 130, where the description was, "a lot of land joining a small tract now occupied by Michael McCue;" *Hammer* v. *McEldowney*, 46 Pa. 334, where the description was, "the houses on Smithfield street," in the city of Pittsburgh; *Miller* v. *Campbell*, 52 Ind. 125, where the description was, "the 120 acres of land in Shannon county, Missouri." In the last case cited it is said: "Doubtless the parties may have had in view a particular tract of land containing 120

acres, and the plaintiff may have been able to show by ex-
trinsic evidence what particular tract was intended; but
this would be to subvert and overthrow the statute."

The evidence shows that the premises described in the
contract of sale were occupied as a homestead by the ap-
pellees, and the opinion holds, not only that the contract
may be enforced, but that the estate of homestead is there-
by waived, and appellees may be compelled to release the
homestead though the formalities required by law for the
waiver of the homestead right were not complied with in
the execution of the contract. Section 27 of chapter 30 of
the Revised Statutes of 1874 provides that no deed or other
instrument shall be construed as releasing or waiving the
right of homestead unless the same shall contain a clause
expressly releasing or waiving such right; that in such
case the acknowledgment shall contain a clause expressly
showing that the parties executing the instrument intended
to release such right, and that no release or waiver of the
right of homestead by the husband shall bind the wife un-
less she joins in it; and section 4 of chapter 52 is to the
same effect. It has been so long recognized as to make the
citation of authority unnecessary, that any transfer or con-
veyance of the homestead estate, or any attempt to release,
waive or encumber it, is void unless the same is in writing,
executed and acknowledged in accordance with these sec-
tions. The fact that the contract does not contain a waiver
of the homestead estate does not make the contract void or
prevent its specific performance. (*Watson* v. *Doyle,* 130
Ill. 415; *White* v. *Bates.* 234 id. 276.) But the decree
should be subject to the homestead estate and should oper-
ate only upon the excess above $1000 in value. An action
could be maintained for the breach of such a contract by
reason of the existence of the homestead estate but not to
compel the conveyance of that estate. An actual convey-
ance of the land by a warranty deed or mortgage which did
not expressly waive the homestead estate would be void as

to the homestead by the express terms of the statute. A contract of sale is not a deed but it is an "other instrument," and is equally within the terms of the statute. If the owners of a homestead cannot be deprived of it by a warranty deed which they have executed without observing the requirements of the law, a mere contract to make a deed which omits such requirements ought not to be given any greater force.

The authority to sell was for $35 an acre, to be paid at any time after twelve months from January, 1909. The sale was not made on those terms but for $35 an acre, $100 cash on September 9, 1909, the day of the sale, and the rest of the purchase price on September 15, 1909. It may be said that this arrangement of the payment was better for the vendor; but this is not for the agent, the purchaser or the court to say. The owner of property may himself fix the terms on which he will part with it. His agent must follow the terms he is authorized to make, and a court has no right to compel him to part with his property except upon terms to which he has agreed. It is the duty of courts to enforce the contracts which parties have made and not to make contracts for them. *Jones* v. *Howard,* 234 Ill. 404.