ROBERT C. THORNE, Appellant, *vs.* EMIL JUNG, Appellee.

*Opinion filed Feb. 23, '12—Leave to file petition denied April 3, '12.*

1. APPEALS AND ERRORS—*when no certificate of evidence is necessary.* Where all of the correspondence which is relied upon as showing an agent's authority to make a contract of sale is set out in a bill for specific performance and the answer thereto, such correspondence becomes a part of the record without a certificate of evidence; and the rule that where a bill is dismissed for want of equity appellant must preserve the evidence, by certificate, in order to show that the bill was improperly dismissed does not apply.

2. PRINCIPAL AND AGENT—*what does not authorize agent to enter into a contract.* A letter from the owner of real estate to an agent with whom the property had been listed, saying that if the agent's proposed customer will pay the price stipulated "I will sell" the property, and directing the papers, in case of a sale, to be made out by a certain trust company, "to whom I will give the necessary instructions if you make the sale," etc., does not confer authority upon the agent to make a contract of sale which will bind the owner. (*Jones* v. *Howard,* 234 Ill. 404, followed; *Hedrick* v. *Donovan,* 248 id. 479, distinguished.)

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

NING ELEY, (ROBERT N. HOLT, of counsel,) for appellant.

WILLIAM SLACK, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is an appeal from a decree dismissing, for want of equity, a bill filed for the specific performance of a contract for the sale of real estate. The contract sought to be enforced was made with appellant by J. A. Wendell & Co., real estate agents doing business in the city of Chicago. The authority of Wendell & Co. is contained in certain letters written by appellee, Jung, who was a resident of the State of California. The principal controversy between the par-

ties concerns the extent of the agent's authority. The cause was heard upon the bill, answer, replication and a written stipulation signed by the parties. There is no certificate of evidence in the record.

Appellee contends that since a decree dismissing a bill for want of equity requires no evidence to support it, the duty rests upon appellant to preserve, by certificate, the evidence showing that the court improperly dismissed the bill. As a general rule appellee's position is correct. (*Kelly* v. *Funkhouser,* 171 Ill. 205.) It is true, as contended, that a decree dismissing a bill needs no supporting evidence, since such a decree may be rendered for want of evidence to support the bill. (*First Nat. Bank of Chicago* v. *Baker,* 161 Ill. 281.) But the above rule contended for has no application to the case at bar, for the reason that all of the correspondence which is relied on as conferring authority upon Wendell & Co. to execute the contract in question is set out in the bill and answer thereto. All matters set out and admitted by the pleadings become a part of the record without being preserved by a certificate of evidence. (*Bressler* v. *McCune,* 56 Ill. 475; *Stevison* v. *Earnest,* 80 id. 513; *Dilworth* v. *Curts,* 139 id. 508.) There was no necessity for a certificate of evidence in this case.

On February 10, 1911, appellee, in reply to a letter of inquiry from Wendell & Co., wrote them, saying that he was willing to dispose of the property in question; that his price was $13,500, and saying that "if you think that you can dispose of the lots you can list the property, and in case of a deal I will pay two and one-half per cent commission." In this letter appellee informed Wendell & Co. that there was a $4000 mortgage on the property, and that he had listed the property for sale with A. D. Harding on the same terms mentioned to Wendell & Co. On February 18 Wendell & Co. acknowledged the receipt of this letter, and said: "We shall be pleased to bear same in mind at the figure you want for it, $13,500, and will submit it when-

ever the opportunity offers." On March 18, 1911, Wendell & Co. wrote appellee, saying that they had a client who had intimated that he would consider the purchase of the property on the basis of $12,000, and advising appellee that they thought it would be to his interest to authorize them to close the deal on that basis. Replying to this letter, appellee wrote, under date of March 25, as follows:

"Your favor of the 21st inst., with copy of your favor of the 18th inst., which did not reach me, and tax bill for 1910, is duly to hand and contents carefully noted.

"It is a fact that Madison street has developed very slowly in the last ten years, but I am satisfied that the next few years will bring a great change in values on Madison street west of Fortieth avenue—what I would call the 'new west side.' The territory north and south of this district is building up so rapidly that a new business center will be created, and my corner will make an ideal location for a department store. However, I am willing to make a concession and split the difference if your customer can make the deal a cash transaction. In other words, I will sell the corner for $12,750.

"You know there is a mortgage of $4000 on the property which is held by Mr. M. C. Clancy, who has an office at 84 LaSalle street, and who holds the abstract. The mortgage can be paid at any time, but should your customer want to assume it in order not to be obliged to raise so much cash, he can make arrangements with Mr. Clancy. I also want to state that I own a guarantee policy issued by the Chicago Title and Trust Company, which I will turn over to the prospective buyer.

"I have always closed my real estate deals through the Chicago Title and Trust Company, and if you should be able to close this deal, please have the papers made out by them and let the deal go through their escrow department. This I found out is always the most satisfactory way for both parties, and I am willing to pay the charges of the escrow department.

"Your commission, which would amount to $318.75, you can retain out of the earnest money and turn over the balance to the title and trust company, to whom I will give the necessary instructions, if you make the sale.

"I give you these informations to save time, should the deal be made, and await your further good news.

"Yours very truly,

EMIL JUNG."

Upon the receipt of this letter Wendell & Co. entered into a written contract for the sale of the premises involved, to appellant. The contract was dated April 1, 1911, and on that day Wendell & Co. telegraphed appellee: "Your letter received; have practically closed deal; will write Monday." It appears from subsequent correspondence, and before appellee had any notice that Wendell & Co. had entered into a contract, that appellee had sold the premises through his agent, Harding. The Harding sale was closed on April 6. The first notice appellee received of the contract having been entered into by Wendell & Co. with appellant was on April 8.

Appellee contends that the authority contained in his letter of March 25 did not extend to the making of a binding contract of sale, and that, even if such authority was given, there was such a departure by the agents from the prescribed terms that he is not bound by the contract. We are of the opinion that this case cannot be distinguished from *Jones* v. *Howard,* 234 Ill. 404, and that, properly construed, the letter of appellee of March 25 did not empower Wendell & Co. to enter into a binding contract of sale, and that the only authority intended to be delegated was to find a purchaser who was willing to buy the property upon the terms stated.

Appellant relies with apparent confidence upon the case of *Hedrick* v. *Donovan,* 248 Ill. 479. The authority of the agent in the Donovan case was a written power under seal, authorizing the agent to "sell and transfer" the real estate referred to. In construing the authority there given, importance was attached by this court to the use of the word "transfer" in connection with the word "sell," and it was held that a fair construction of the language used indicated that the owner contemplated the making of an agreement that would bind the principal. In the letter of authority in the case at bar appellee says: "I am willing to make a concession and split the difference if your customer can

make the deal a cash transaction. In other words, I will sell the corner for $12,750." Further on he says: "I have always closed my real estate deals through the Chicago Title and Trust Company, and if you should be able to close this deal, please have the papers made out by them and let the deal go through their escrow department." Then again he says in the letter, "I will give the necessary instructions if you make the sale." All of the language of the letter must be construed together, and when thus considered we think the case falls under the authority of the *Jones-Howard case* and other cases which hold that a mere general authority to sell or "to make a sale" will not ordinarily be held to confer authority to enter into a binding contract.

Since in our opinion the decree below may be sustained for want of authority in Wendell & Co. to make the contract, it is not necessary to consider the question whether the contract exceeded the terms prescribed in the appellee's letter.

There was no error in dismissing appellant's bill, and the decree of the circuit court of Cook county will be affirmed.

*Decree affirmed.*