(No. 20078.—

MARY HOGAN *et al.* Appellees, *vs.* DWIGHT H. ORR, Appellant.

*Opinion filed October 25, 1930.*

Joseph W. Maple, and George W. Hunt, for appellant.

Richard H. Radley, and Richard H. Radley, Jr., for appellees.

Mr. Commissioner Edmunds reported this opinion:

Appellees, Mary Hogan and her several children born to her by her late husband, Patrick Hogan, filed a bill in the circuit court of Peoria county to remove a cloud on the title of certain real estate owned by them. Dwight H. Orr and Roy Orr, named as parties defendant, filed an answer, and Dwight H. Orr filed a cross-bill praying specific performance of an alleged written agreement executed by Mary Hogan. Exceptions to the answer and a demurrer to the cross-bill were sustained and a decree was entered awarding the relief prayed for by the bill. Dwight H. Orr has appealed from this decree.

After setting out the ownership by appellees of certain described real estate in Peoria county, Illinois, the bill alleges, among other things, that on or about December 5,

1924, Roy Orr procured Mrs. Hogan to sign and deliver to him a receipt or agreement whereby she acknowledged receipt of $50 as first purchase price for about five acres of ground located at the corner of Bronz and Elizabeth streets, in Peoria, Illinois; that she kept no copy of said instrument and appellees do not know its exact terms but charge upon information and belief that the purchase price was not stated, that the premises were not so definitely described that a legal conveyance could be made thereof and that the party to whom conveyance was to be made was not named therein; that the instrument did not comply with the Statute of Frauds; that appellees set up and rely upon the statute, and that on April 1, 1925, appellant filed in the recorder's office of Peoria county a certain notice in writing. This notice is then set out. It states that "Dwight H. Orr, being duly sworn, on his oath states that he is the holder of a certain receipt and agreement dated December 5, 1924, duly signed by Mary A. Hogan, whereby the said Mary A. Hogan acknowledged receipt of fifty dollars ($50) as part purchase price for about five acres of ground located at the corner of Bronz and Elizabeth streets, Peoria, Illinois, which premises are described as follows: [describing them.] Affiant further states that he has been at all times, and is now, ready, willing and able to complete said purchase price and pay the balance of said purchase according to the terms and provisions of said receipt and agreement, which is still in full force and effect. Affiant further states that he is the owner of the equitable title to said premises and is entitled to a good and sufficient deed of conveyance therefor upon payment of the balance of said purchase price, as aforesaid." The notice is shown as having been duly sworn to and recorded. The bill then alleges on information and belief that the receipt and agreement mentioned in the notice are the receipt and agreement signed by Mary Hogan, as heretofore stated in the bill, but that the terms and provisions of the receipt and agreement are

not as stated in the notice, and that the notice is a cloud on the title of appellees in the premises and should be removed. The $50 check given by Roy Orr to Mrs. Hogan at the time of signing the receipt or agreement is tendered back, and the bill concludes with a prayer that the notice filed in the recorder's office be removed as a cloud from the premises above described, that the receipt or agreement may be delivered up for cancellation, and that such other and further relief may be granted as equity may require.

The answer admits the making of the instrument referred to in the bill and sets it out, as follows:

"PEO ILL 12-5-24

"Received from R. C. Orr fifty dollars ($50.00) as part pay for ground about 5 acres cor Bronse & Eliz Peoria Ill. Twenty three hundred fifty 00/100 dollars $2350.00 to be paid as soon as abstract is made showing good merchantable title and accepted. Bal. fifty one hundred 00/100 dollars payable one year at the rate of 7% interest per an. Five hundred dollars less if paid within six months. Interest paid from date.                    MARY A. HOGAN."

The following indorsement is also set out:

"For value received, I hereby transfer, assign and set over to Dwight H. Orr the within agreement and receipt this December 5, 1924.                    R. C. ORR."

The answer alleges that said instrument was for value received duly assigned by Roy Orr, under the name of R. C. Orr, to Dwight H. Orr on December 5, 1925, and that Dwight H. Orr is now its legal and equitable holder; denies that the purchase price of the premises was not stated in the instrument and that the premises were not so definitely described therein that a legal conveyance could not be made thereof, and further denies that the instrument did not comply with the Statute of Frauds. It is further alleged by the answer that the real estate described in the bill of complaint was the only tract of five acres of land owned by Mrs. Hogan at the corner of Bronz and Elizabeth streets, Peoria; that it is the same land referred to and

described in the instrument executed by Mrs. Hogan and that it was the subject matter of the instrument. The execution and recording of the notice of April 1, 1925, are admitted. It is alleged that the instrument mentioned therein is the same receipt and agreement which were signed by Mrs. Hogan, but the answer denies that the terms and provisions of the instrument are not as stated by the notice.

The cross-bill of Dwight H. Orr represents the filing of the original bill, the service of process and the putting in of the answer, "as by the said bill and other pleadings and proceedings in said cause on file and of record in this honorable court, reference thereto being had, will more fully appear." It then proceeds to set out the correct description of the Hogan property, and alleges that Mrs. Hogan entered into a written agreement to convey it. The alleged agreement of Mrs. Hogan in the form of the above quoted instrument of "12-5-24" is set out and specific performance thereof is prayed.

It is apparent at the outset that any proper conclusion as to the merits of the cause must rest fundamentally upon a determination as to the force and effect of the alleged agreement signed by Mrs. Hogan. A contract for the sale of land must definitely point out the land to be conveyed or furnish a means of identifying the land with certainty. If it fails in either of these respects a court of equity will not decree its specific performance. Such a contract must on its face describe the particular parcel of land sold, and if the description is uncertain and requires parol evidence to locate the property specific performance cannot be decreed. Where the description contains a patent ambiguity or one which appears on the face of the writing itself, the uncertainty in the description cannot be cured by extrinsic evidence. (*Kopprasch* v. *Satter,* 331 Ill. 126.) The instrument here refers to "ground about 5 acres cor Bronse & Eliz Peoria Ill." It may be assumed that we are warranted in taking "cor" to mean corner and "Eliz" to mean

Elizabeth, and that "streets" should be added to "Bronse & Eliz," but the result of such assumption is only to disclose a patent ambiguity of description. As a physical fact, "corner Bronze and Elizabeth streets" implies an intersection of those streets, resulting in at least two, and possibly four, corners. No clue is expressed as to which corner is meant. The area is not definitely stated, nor is there any reference whatever to ownership, occupation, or any other fact which would make the description apparently definite and by which it could be applied to a specific piece of property. In *Holmes* v. *Evans,* 48 Miss. 247, the writing was: "Received from M. Holmes one hundred dollars, as part payment on a piece of property on the corner of Main and Pearl streets, city of Natchez, county of Adams, State of Mississippi." As the court there said: "In the case under consideration the memorandum or receipt refers to no extrinsic fact by which it could be ascertained on which corner of Main and Pearl streets the land in controversy is situated, and to allow parol evidence to establish its locality would be in violation of the statute in allowing that to pass by parol which the statute says shall not so pass, and would open the door to all the mischiefs intended to be provided against by the statute." The allegations of the answer and cross-bill purporting to supplement the description in the alleged agreement and connect it up with appellees' property were without force, and the court did not err in proceeding upon the basis that the alleged agreement was invalid. *Heroux* v. *Romanowski,* 336 Ill. 297; *Kopprasch* v. *Satter, supra; Weber* v. *Adler,* 311 Ill. 547; *Higinbotham* v. *Blair,* 308 id. 568; *Alleman* v. *Hammond,* 209 id. 70; *Rampke* v. *Beuhler,* 203 id. 384; *Winter* v. *Trainor,* 151 id. 191; *Dobson* v. *Litton,* 5 Coldw. (Tenn.) 616.

Appellant insists, nevertheless, that such conclusion is by no means decisive of this case, and advances the contention that however defective the alleged agreement may be held to be in itself, under the circumstances here pre-

sented there was error in the rulings and decree of the chancellor. In support of this contention appellant argues that by the allegations and purport of their bill appellees necessarily admit application of the instrument to their land; that before it could constitute a cloud upon their title it must contain a sufficient description to locate the land, and if it does contain such description it is definite enough to be specifically enforced, and that appellees are therefore in the position of taking one stand in their bill and adopting an inconsistent one in their exceptions to the answer and demurrer to the cross-bill. It is also argued that the chancellor erred in granting relief to appellees, for the reason that a patent ambiguity cannot be a cloud on title. In answering these arguments it need only be borne in mind that the bill sought removal as a cloud on title—not of the alleged agreement but of the sworn and recorded notice, which set up appellant's claim to equitable ownership of appellees' property and contained a full and correct description applying thereto. We said in *Rigdon* v. *Shirk,* 127 Ill. 411: "A cloud is said to be the semblance of a title, either legal or equitable, or a claim of an interest in lands, appearing in some legal form but which is, in fact, unfounded or which it would be inequitable to enforce." Unless appellant was, in fact, the equitable owner of appellees' property, such recorded notice constituted a cloud upon their title within the scope of this definition. Whether or not appellant was such owner depended upon the validity of the alleged agreement referred to in the notice. To state their case appellees properly alleged in their bill the existence and invalidity of that instrument and the manner in which appellant used it in connection with their property. Appellees referred to it, not as being in any sense applicable to confer upon appellant rights in their property but rather as possessed of no inherent validity whatever, thereby depriving of all foundation the instrument which constituted the cloud. For the reason already discussed the chancellor

was right in holding the alleged agreement to be without legal effect, and the order removing the notice as a cloud followed as a matter of course. To have stopped there, however, would have left the alleged agreement outstanding as a means whereby appellees stood to be possibly annoyed and harassed by further claims and proceedings initiated by appellant or his assigns. Being without validity there was no substantial or legitimate reason for its further existence. As a measure of ancillary relief there was ample propriety in praying its cancellation, and the chancellor rightly exercised his discretion by calling it in and canceling it in accordance with such prayer.

Appellant insists further that the Statute of Frauds is a shield, only, and cannot be used as a sword; that the purpose of appellees' bill was to invoke such statute affirmatively, and that to grant the relief prayed was consequently improper. Analysis of this argument proves it to be misleading. Not appellees, but appellant, made the first move in connection with the alleged agreement of Mrs. Hogan. This move did not take the form of a bill for specific performance. If it had taken such form the assertion of title thus made would have failed in the end because of the absence of a valid and enforceable written contract. Appellant adopted other means of utilizing the alleged agreement to carry the issue to appellees and proceeded to put them on the defensive by executing and recording a personal affidavit which definitely described their premises, thereby supplying the substance for the lack of which the alleged agreement itself was invalid and setting up an affirmative and apparently valid claim of title to the property. The effect of this was necessarily to force appellees into a corner, and appellant would now keep them there by invoking a principle which, however applicable it may be where the Statute of Frauds is directly involved, has no application where brought into the case only collaterally, under such circumstances as are disclosed of record here. The

short answer to appellant's contentions is, therefore, that they fail to take into account the direct purpose of the bill and the fundamental effect of the decree.

The chancellor's rulings were proper, and the decree of the circuit court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*