(No. 21822.—

MABEL L. BECKER, Appellee, *vs.* D. E. ROWE, Appellant.

*Opinion filed December 22, 1933—Rehearing denied Feb. 8, 1934.*

LEDERER, LIVINGSTON, KAHN & ADLER, and KNOCH & KEENEY, (SIGMUND LIVINGSTON, and IRVING S. ADLER, of counsel,) for appellant.

MALCOLM MECARTNEY, (JAMES J. KILGALLON, of counsel,) for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

By this appeal from the circuit court of Cook county the appellant, D. E. Rowe, who was the defendant below, seeks to reverse a decree compelling him to specifically per-

form a contract which he made with the appellee, Mabel L. Becker, complainant below, for the purchase of residential property in the village of Hinsdale. In so far as material the contract is as follows:

*"Agreement.*

"D. E. Rowe agrees to buy at the price of thirty thousand dollars ($30,000), which includes the mortgage indebtedness, if any, hereinafter specified, the following described real estate in Cook county, Illinois:

"Lots seven (7) in block seven (7) of 'The Woodlands,' a subdivision of record of the village of Hinsdale; and Mabel Becker agrees to sell said premises at said price and to convey or cause to be conveyed to buyer good title thereto by warranty deed, with release of dower and homestead rights, subject only to: Special taxes or assessments for improvements not yet completed; installments not due at date hereof, on special tax or assessment for improvements heretofore completed; general taxes for year 1930 and subsequent years; building lines and building and liquor restrictions of record; zoning and building laws or ordinances; party-wall rights or agreements, if any; roads and highways, if any; principal indebtedness aggregating $13,000, payable $1000 December, 1930, balance December, 1931, bearing interest at the rate of six per cent per annum, secured by mortgage or trust deed of record; general taxes for 1930 to be pro-rated from January 1 to date of delivery of deed."

It will be noted that the contract provides that the property was to be purchased by the appellant subject to "building lines and building and liquor restrictions of record," etc. The plat of the Woodlands subdivision, from which the description was taken and to which direct reference is made in the contract, contained the following under the heading "Building restrictions": "For a period of twenty-five years from and after July 1, 1923, all the lots and blocks shown on this plat shall be used or improved for residence purposes only, and no residence, when completed, shall be reasonably worth (exclusive of the land upon which it stands) less than $12,500, said value to be computed as of July 1, 1923. For and during said period of twenty-five years no apartment building or building de-

signed for the use of more than one family, or for business, industrial, hotel, poultry industry or commercial purposes, shall be erected or placed on said premises. However, suitable garages and other out-houses may be erected or placed on said premises to be used by the occupants of any dwelling thereon, but no garages or other out-houses or any temporary structures shall be occupied as a dwelling on said premises prior to the completion of the permanent dwelling itself thereon. For a period of five years from July 1, 1923, no dwelling shall be erected on said premises without the plan and specifications thereof being first presented to William R. Jordan or Ralph W. Olmstead for their inspection, said building, when erected, to be in substantial compliance in design and material with said plans and specifications. Until July 1, 1948, no more than one dwelling shall be built on any of the lots above laid out, unless each dwelling, when so erected, shall be on a lot or portion of a lot having a frontage on the street upon which it shall face, of at least one hundred feet. Building lines shall be as indicated on the within plat, and no porches, steps, bay windows or other portions of any building shall extend over said building line. Where no building lines are indicated said lines shall be in conformity with the ordinances of the village of Hinsdale. The right is hereby reserved in favor of any public utility designated by the municipality, for the placing and maintaining perpetually on the rear five feet of all lots in this subdivision, of electric light and telephone poles and wires and other facilities necessary for other public or quasi-public service, together with the right of access thereto for such purposes. The restrictions herein contained shall be binding upon and enforceable by and shall inure to the benefit of the heirs, personal representatives and assigns of William R. Jordan and Ralph W. Olmstead and all persons deriving title from or through them. At no time before September 1, 1925, shall any lots be sold in blocks 7 and 8 shown hereon unless

a lot contiguous thereto and facing on the same street is sold at the same time to the same person, nor shall any dwelling be erected on any lot or lots in said blocks 7 and 8 during said period unless said dwelling shall be built on a lot or lots having a frontage on County Line road, Cleveland road or McKinley lane of at least two hundred feet, nor shall any dwelling during the period of twenty-five years from and after July 1, 1923, be erected on any lot or lots facing on County Line road having a reasonable value, when completed, (exclusive of the land upon which it stands,) of less than $17,500, said value to be computed as of July 1, 1923."

Following these building restrictions there is also on the record of the plat a note concerning certain parcels of land which were dedicated as parks. This has no bearing on the case before us, hence is omitted. There is no line drawn across the rear of the lot in question to indicate the five-foot strip off the rear of the property included in the easement reserved for the use of public utilities.

The plat containing all the matters mentioned was recorded as document No. 216,469 in the office of the registrar of titles of Cook county prior to the time the appellee acquired title to the property in question, in 1926.

The appellee had requested a real estate broker named James Kavana to sell the property for her. Kavana took the appellant to the property and while there pointed out the two telephone poles at the rear of the property. Within the sixty days provided for by the contract the appellee delivered to the appellant the owner's duplicate certificate of title under the Torrens act, which the contract stated was one of the three ways in which evidence of title to the property in the appellee might be shown. The certificate showed that the property was subject to the easement reserved in the building restrictions, which we have already quoted, and also showed the reservation contained in the deed to the appellee, of the right of the Illinois Bell Tele-

phone Company to maintain its telephone line on the rear line of the property.

The appellant refused to perform the contract. Suit was brought to compel specific performance after the appellee had tendered a deed to the appellant.

The appellee bases her case upon the contract. She contends that the appellant was bound to take the property subject to the "building [and liquor] restrictions of record;" that among those restrictions is contained the reservation of an easement over the rear five feet of the property which she contracted to sell and the appellant contracted to buy; that the right reserved to her in the deed from the subdividers of the land by which she acquired title, adds nothing to the original reservation of the easement over the five-foot strip off the rear end of the property in question. The language, in part, in the particular building restriction in question is: "The right is hereby reserved in favor of any public utility designated by the municipality, for the placing and maintaining perpetually on the rear five feet of all lots in this subdivision, of electric light and telephone poles and wires and other facilities necessary for other public or quasi-public service, together with the right of access thereto for such purposes." In the deed to the appellee the language in question is: "The grantors reserve to the Illinois Bell Telephone Company the right to erect or locate poles, wires, or such other equipment as may be necessary, over and across the rear line or lines of said lot or lots." This made no addition whatever, and was, in fact, less than was contained in the easement created by the building restrictions referred to in the contract between the parties. Here the telephone company's rights are confined to the rear line of the "lot or lots," while in the building restrictions the rear five feet of the lots was subject to the easement, and telephone poles, wires and "other facilities" necessary to public service are mentioned specifically. Since the one is contained in the

other there is no enlargement or additional burden sought to be imposed on the land. The appellant and a switch-board operator employed by the company at its plant, of which the appellant was a vice-president, testified that he withdrew from the appellee his offer to purchase the property in question before she had signed the contract. The appellee, her two sons and James Kavana, the real estate broker, all testified that this was not the fact. The evidence on this point clearly is in favor of the appellee.

In our view of this case the only question to be decided is, Did the contract itself oblige the vendee to take the title subject to the easement over the rear five feet of the property, reserved by the subdividers of the land and contained in the building restrictions set out in the original recorded plat?

In *Ingraham* v. *Brown,* 231 Ill. 256, we held that a plaintiff in an ejectment suit is estopped to deny the existence and legal effect of a plat covering the premises involved in the suit, if in the plaintiff's chain of title appear conveyances of the land according to the lot and block numbers of the plat. In arriving at the meaning of the plat the following was said: "The strip runs across the entire subdivision, and while not named upon the plat as a street it is marked upon its margin with the figures '138,' and the surveyor, in his certificate attached to said plat, certifies that 'all measurements are taken in feet and parts of a foot, and the several sizes of the lots and blocks and widths of streets and alleys are marked on their margins, as shown upon the plat.' We are unable to understand why the figures '138' were placed upon the margin of said strip as platted if it was not the intention of the surveyor to indicate upon the plat by such figures the width of said strip and that it was set apart as a public street. * * * 'A survey and plat, alone, are sufficient to establish a dedication, if it is evident from the face of the plat it was the intention of the proprietor to set apart certain grounds

for public use.' " Citing *Thompson* v. *Maloney,* 199 Ill. 276. It will be noted that not only the lines and figures which were a part of the plat but also the language used by the surveyor in his certificate attached to the plat were considered in arriving at the correct interpretation of the plat in question.

In *Thomas* v. *Metz,* 236 Ill. 86, we said : "When block 8 was re-surveyed, a plat thereof was made and recorded showing a sixteen-foot alley extending through the center of the block from north to south. As this plat did not conform to the statute there was no statutory dedication of the alley. Thereafter, owners of real estate in that block, through whom plaintiff in error claims, conveyed realty therein according to the descriptions contained in the plat and by reference to the plat. By so doing they adopted the entire plat, with all its dedications."

It is not argued from the fact, alone, that the parties described the property in question by reference to the recorded plat, that the appellant was bound to take the property subject to the building restrictions, which were made a part of the plat by the subdividers, but it certainly must be held that where they did this and made the agreement for sale "subject to building restrictions of record," both the parties intended to include any and all restrictions contained in the plat. For this reason, and since the contentions of the appellant are based upon the claim that the existence of the easement constitutes a defect in title, the points urged by the appellant as reasons for reversing the decree of the chancellor are not applicable to this case. These contentions are: First, that an easement to construct and maintain poles, wires and facilities for its service granted to a public utility is an encumbrance upon the fee title; second, the breach of a covenant by a vendor to convey good and merchantable title in fee cannot be excused or cured by the fact that the vendee had previous knowledge of the encumbrance or easement, the existence

of which would violate such covenant; third, the allegations and proof must correspond; and fourth, the court cannot take judicial notice that an encumbrance by a perpetual easement upon the title to land does not diminish the value or impair the use of the land. In our view of the case these questions are not material since there was no breach of covenant by the appellee. She tendered evidence of the title and a deed conveying the title to the premises in full accordance with the contract.

The appellee has consented that the decree be modified, and that instead of the manner of payment being, as provided, in gold coin, etc., the decree provide that payment be made by the appellant in currency of the United States. The decree is therefore hereby modified in this particular, and with that modification the decree of the trial court is affirmed.

*Decree modified and affirmed.*