WINIFRED I. STEVENS, Indiv. and as Adm'r of the Estate of Theodore H. Stevens, Deceased, *et al.*, Plaintiffs and Counterdefendants-Appellants, *v.* ROSS WILSON *et al.*, Defendants and Counterplaintiffs-Appellees.

Fifth District    No. 79-473

Opinion filed August 5, 1980.

John P. Wham, of Wham & Wham, of Centralia, for appellants.

George W. Lackey, of Lackey & Lackey, of Centralia, for appellees.

Mr. JUSTICE KARNS delivered the opinion of the court:

Winifred Stevens, individually and as administrator of the estate of her deceased husband, T. H. Stevens, and their children, brought this action in the Circuit Court of Marion County to remove as a cloud on their title and to declare forfeited for nonpayment by the defendant purchasers, Ross and Lenora Wilson, an installment contract for the sale of certain real property owned by plaintiffs. The complaint also prayed that plaintiffs be allowed to retain certain payments made by defendants as liquidated damages. Plaintiffs appeal from the judgment in favor of defendants on their counterclaim allowing rescission of the contract and damages.

The property to be sold was described in the contract as follows:
"Lots 1, 2, 3, 4, 5, 6, 7, 8, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 24, the North 80 feet of Lots 37, 38, 39 and the West Half of Lot 48, Lots 67, 68, 72, 82, 83, 84, 85, 86, 89, 90 and 101, all situated in Lake Forest Subdivision, commonly known as 'Hubbard's Woods', Section 19, Town 1 North, Range 2 East of the Third Principal Meridian, Marion County, Illinois, together with all of Sellers' right, title and interest in and to said Lake Forest Subdivision, including roads, streets, lake dam and easements and any and all

right, title and interest in and to the use of same and any of the improvements, and appurtenances thereunto belonging, said Lake Forest Subdivision being that laid out by D. M. Hubbard and Stella Hubbard, his wife, and surveyed and platted by Tony C. Pitchford as evidenced by said Surveyor's Certificate dated May 15, 1940, on a part of the South Half of the Northeast Quarter of Section 19, Township 1 North, Range 2 East of the Third Principal Meridian, situated in the County of Marion, State of Illinois; ALSO part of the Southwest Quarter of the Northeast Quarter of Section 19, Town 1 North, Range 2 East of the Third Principal Meridian, Marion County, Illinois, containing 15 acres, more or less; ALSO part of the Southeast Quarter of the Northeast Quarter of Section 19, Town 1 North, Range 2 East of the Third Principal Meridian, Marion County, Illinois, containing 30 acres, more or less, saving, excepting and reserving unto the Sellers an undivided one-half interest in and to all the coal, oil, gas and other minerals underlying all of the above real estate."

The contract was dated April 28, 1972. It provided that "* * * if the Purchasers shall first make the payments and perform the covenants hereinafter mentioned * * *," the sellers would convey the described property. The contract as typed provided for conveyance by quitclaim deed, but the words "Quit Claim" are struck through, with the words "Warranty Except Lots" written above. The contract set a purchase price of $14,000 to be paid by a downpayment of $4000 and four annual installments of $2500, the first of these installments being due April 4, 1973. The buyers were also required to pay all taxes and assessments subsequent to 1971.

The purchasers made the $4000 downpayment before the date of the contract and paid an additional $300 on or about September 1, 1972, but failed to make any further payments. They failed to pay the taxes for 1972 and subsequent years. Prior to the filing of the plaintiff's complaint on July 25, 1977, Lenora Wilson transferred all her interest in the contract to Ross Wilson, and they were divorced.

It is undisputed that the purchaser failed to perform his obligations under the contract beyond making the downpayment. However, in an amended counterclaim seeking rescission of the contract he asserted that the description of the 15 acres in the Southwest Quarter of the Northeast Quarter of Section 19, and the 30 acres located in the Southeast Quarter of the Northeast Quarter of Section 19, are so vague and uncertain as to render the contract invalid.

Apparently, the court agreed, stating in its decree that "[t]he Contract for Deed is patently ambiguous with respect to the description of the premises to be conveyed and the description is so uncertain and

indefinite as to render the contract void and unenforceable and to make it impossible for the Sellers under the Contract to convey merchantable title to the Purchasers." Also, the court granted the purchaser's counterclaim to recover the $4300 he paid under the contract and $4417.68 he expended in his efforts to improve the property. Finally, the court ordered the purchaser to execute and deliver to the plaintiffs a quitclaim deed or other recordable instrument to remove the contract as a cloud on title.

■■ ■ The sellers bring this appeal contending that the evidence at trial positively identified the described property. We agree that the following passage from *Ashline v. Verble* (1977), 55 Ill. App. 3d 282, 284, 370 N.E.2d 613, 615, states the controlling principles for determining the sufficiency of the legal description:

"When an uncertainty as to the description of the land exists, the rule that the intention of the parties will determine the effect of a deed applies equally to the description of the property, and extrinsic evidence may be used to determine the parties' intentions. (*Brenneman v. Dillon* (1920), 296 Ill. 140, 129 N.E. 564.) Or, to state the rule somewhat differently, an instrument will not be rendered ineffective for uncertainty of the premises to which it relates if by the aid of extrinsic evidence it can be made certain and the property located. *In re Frayser's Estate* (1948), 401 Ill. 364, 82 N.E.2d 633.

It has been held that to satisfy the requirement of certainty in a real estate contract, 'that is certain which can be made certain.' (*Guyer v. Warren* (1898), 175 Ill. 328, 51 N.E. 580.) And, with regard to certainty, it is not necessary in contracts for the sale of real estate that the land should be so described as to admit of no doubt as to what it is. *Callaghan v. Miller* (1959), 17 Ill. 2d 595, 162 N.E.2d 422; *Hendrick v. Donovan* (1911), 248 Ill. 479, 94 N.E. 144."

For example, *Guyer v. Warren* held that a contract for the sale of "[o]ur farm in Le Claire's reserve, Rock Island county, and consisting of eighty-three and 31-100 acres, more or less" was not void for uncertainty, where it could be shown with certainty what lands the sellers owned within the reserve and county named. In *Werling v. Grosse* (1979), 76 Ill. App. 3d 834, 395 N.E.2d 629, we held that a description of property as "my farm" was sufficient where the inventory in the seller's estate listed only the property in question and it was stipulated that the seller had owned only one farm.

The purchaser contends that the instant description was "patently ambiguous" with respect to the 15- and 30-acre parcels and that extrinsic evidence is not permissible to cure patently defective descriptions. It is true that language in some cases appears to support the contention that the patent ambiguity rule applies not only in determining whether a real

estate contract is specifically enforceable, but also in determining whether a contract exists. (See, *e.g., Hogan v. Orr* (1930), 341 Ill. 58, 173 N.E. 162; *Weber v. Adler* (1924), 311 Ill. 547, 143 N.E. 95.) However, the purchaser has cited no case in which the patent ambiguity rule is applied to hold a contract for the sale of real estate void for uncertainty, entirely apart from the question of specific enforceability. We believe that the correct approach in determining whether a description is sufficient to support the existence of a contract was expressed in *Guyer v. Warren* and *Ashline v. Verble*, and that the patent ambiguity rule, insofar as it applies to real estate sale contracts, relates to the issue of whether the contract is sufficiently definite in its terms to allow specific performance, rather than to the more limited question of whether a contract exists. To entitle a party to specific performance it is not enough to show that a contract exists; the contract must be so definite and certain in all its terms that the court can require the specific thing contracted for to be done. (*Kopprasch v. Satter* (1928), 331 Ill. 126, 162 N.E. 141.) The present inquiry is limited to the issue of whether a contract existed, and it is therefore proper under the authorities discussed previously to review the extrinsic evidence of whether the property described could be ascertained.

The records in the estates of D. M. Hubbard, Stella Hubbard, and T. H. Stevens showed that title had passed to T. H. Stevens under a description similar to that in the contract. A title abstract prepared shortly before trial shows that in 1936, D. M. Hubbard owned the entire south half of the quarter section involved–and that the Hubbards conveyed various parcels from this land and platted Lake Forest Subdivision on a part thereof. A reading of the abstract supports the sellers' position that the 15- and 30-acre parcels described in the contract consist of all the land in the south half of the quarter section except Lake Forest Subdivision and six parcels conveyed by the Hubbards. Based on his estimation of the area of the excepted parcels and the subdivision, Surveyor Harold Bright estimated that the total area of the parcels described in the contract as containing 15 and 30 acres "more or less" was 41.73 acres.

Surveyor Bright testified that he could not locate three of the excepted parcels from the descriptions by which they had originally been conveyed by the Hubbards. However, the abstract showed that the current owners of these parcels quitclaimed them under the original descriptions to Winifred Stevens, who in turn quitclaimed them back to the current owners under clarified descriptions. Bright testified that the new descriptions were determined by his survey of the parcels according to fence lines and other existing lines of possession.

The evidence also involved some question as to the location of Lake Forest Subdivision. The subdivision was platted in 1940. The item in the title abstract pertaining to filing of the surveyor's certificate refers to a

stone placed at the northeast corner of the subdivision as a permanent monument from which future surveys may be made. A copy of the plat shows dimensions for most all of the lot lines. Surveyor Bright testified that he was uncertain about the boundaries of the subdivision and the location of individual lots. However, a surveyor's invoice introduced by the purchaser shows that he was billed for the surveying and pinning of lots 1-8, 11-14, 16-22, 24, and the north 80 feet of lots 37-39 on June 2, 1972. Although he claimed to have been told at the time of the survey that the property could not be found, he continued to finance improvements to the lake property until sometime in 1973. It is apparent that numerous lots had been sold and occupied by others since the platting of the subdivision. The purchaser testified that he had acquired three lots where he had built a house in which he resided at the time he entered into the contract. He also stated that lots had been sold to and occupied by others, and that he himself had sold three to five lots that he had acquired independently of the contract.

■■ We believe that the above evidence was sufficient to demonstrate that the intention of the parties was to contract for the sale of all the land owned by the sellers in the south half of the quarter section, and that the evidence further established that this land could be definitely located.

The purchaser also seeks to attack the merchantability of the sellers' title. He contends that he is not bound by the sellers' efforts to clarify the descriptions of the excepted parcels, that the title abstract shows that the sellers have no title to lots 38 and 39 of the subdivision, and that public utility easements for powerlines and pipelines constitute encumbrances. He argues that a purchaser under a land contract is not required to make payment where the vendor does not have good title, citing *Blunt v. Kelly* (1920), 219 Ill. App. 327, *Christopher v. West* (1951), 409 Ill. 131, 98 N.E.2d 722, and *Swearingen v. Beyer* (1934), 275 Ill. App. 152.

These cases are distinguishable. They involved contracts that provide the seller with an obligation to furnish an abstract and cure defects running concurrently with the purchaser's obligation to make payments. The instant contract provided that the sellers would deliver to the purchaser all title papers that they had relative to the real estate. A handwritten provision was added stating "abstracts to be furnished." However, no date was provided for the delivery of title papers and abstract. In addition, the first clause of the contract provided that " * * * if the Purchasers shall first make payments and perform the covenants hereinafter mentioned * * *," the sellers would convey the described real estate. The concluding provision stated that " * * * time of payment shall be of the essence of this Contract * * *."

It has been held that where no time is fixed for the delivery of a deed in an installment sale contract, the purchaser is not entitled to receive title

until the last payment is made, and his obligation to pay all but the last installment is absolute and unconditional. (*Gray v. Meek* (1902), 199 Ill. 136, 64 N.E. 1020.) Where, as here, the contract provides that the seller will convey upon the buyer's completion of payments, the seller has no obligation to show or even acquire good title prior to full performance by the buyer. (*Monsen v. Stevens* (1870), 56 Ill. 335; *Yates v. Cummings* (1972), 4 Ill. App. 3d 899, 282 N.E.2d 261.) If there is no provision in an installment sale contract requiring that the seller have merchantable title prior to the time for conveyance, he cannot be compelled to furnish an abstract showing such title prior to that time. *Tolbird v. Howard* (1968), 101 Ill. App. 2d 236, 242 N.E.2d 468, *aff'd in part & rev'd in part* (1969), 43 Ill. 2d 357, 253 N.E.2d 444; *Hooven v. Woodiel* (1975), 27 Ill. App. 3d 467, 327 N.E.2d 276.

■■ Under these cases, the purchaser is not entitled to attack the merchantability of the seller's title where, as here, he has failed to pay any of the installments required by the contract. Therefore, while it is true that the abstract indicates that the sellers had no title to lots 38 and 39 of subdivision, they were under no duty to have such title until the time for payment of the final installment, in the event that all prior installments had been timely paid. (*Monsen v. Stevens.*) In addition, even assuming that the purchaser would not necessarily have been bound to accept the clarifications to the descriptions of the excepted parcels had he made the required payments, he offers no reason for concluding that the clarifications did not accurately define the excepted parcels involved.

With respect to the easement question, the purchaser cites *Morgan v. Smith* (1849), 11 Ill. 194, where it was held that the existence of an easement was an encumbrance making title unmerchantable. However, that case involved an easement "* * * to dam up and use the water of a branch running through the land; and, also, to use the water of a spring situated upon it." (11 Ill. 194, 199.) The purchaser also cites *Rock Island Y.W.C.A. v. Bestor* (1977), 48 Ill. App. 3d 761, 363 N.E.2d 413, where the court remanded to allow evidence to be presented on whether a floodplain easement allowing the Federal Government to remove obstructions and overflow the land in question rendered the seller's title unmerchantable. The court reasoned that although the buyers had failed to make payment, an inquiry into merchantability was proper because of the apparent impossibility of performance on the part of the seller.

We see little in common between the easements involved in the above cases and the public utility easements for power lines and pipelines involved here. Merchantable title is not perfect title, but rather title reasonably secure against litigation or flaws decreasing market value. (*Firebaugh v. Wittenberg* (1923), 309 Ill. 536, 141 N.E. 379; *Christopher v. West* (1952), 345 Ill. App. 515, 104 N.E.2d 309.) In *Becker v. Rowe* (1933),

355 Ill. 189, 188 N.E. 918, the buyer was required to take lots subject to an easement for telephone poles where the plat reserved the rear 5 feet of the lots for telephone poles as a building restriction, and the contract provided that title would be taken subject to building restrictions of record. We have found no Illinois authority on the issue of whether utility easements render title unmerchantable where the contract contains no provision that the buyer agrees to take the property subject to such easements. However, applying the general rule concerning merchantability, we must conclude that the instant utility easements for power lines and pipelines do not expose the title holder to an unreasonable risk of litigation, and that, if anything, these easements would tend to increase the value of the property.

Furthermore, as noted in *Rock Island Y.W.C.A. v. Bestor*, a purchaser of real estate, who enters into a contract with actual knowledge of certain restrictive easements or encumbrances, waives any objection to those encumbrances. The purchaser lived for a number of years in Lake Forest Subdivision, constructed a house on lots therein, and bought and sold lots there independently of the instant agreement. These circumstances strongly suggest that he had actual knowledge of the power line and pipeline easements.

We reverse the trial court's judgment to the extent that it held the contract void and allowed the purchaser's counterclaim for recovery of contract payments and expenses incurred toward improvement of the property. It is therefore unnecessary to review the sellers' contention that the counterclaim was barred by the six month statute of limitations on claims against a decedent's estate. The purchaser's default entitled the sellers to forfeit the contract, and the sellers are entitled to retain the amounts paid toward the purchase price as liquidated damages under the forfeiture provision. The trial court's order that the purchaser execute and deliver a quitclaim deed or other recordable instrument to remove the contract as a cloud on title is affirmed.

Affirmed in part; reversed in part.

JONES, P. J., and SPOMER, J., concur.