CLEMENT L. SHINN *et al.*

*v.*

HORACE B. SHINN *et al.*

91  477
22a 127
24a 578
91  477
34a 617
91  477
65a 549
91  477
186  ⁵546
91  477
194  ⁵193
91  477
e115a⁵207

1. PARTY—*bill to foreclose.* On bill to foreclose a mortgage where the mortgaged premises have been sold under a prior mortgage, and a deed made to the assignee of the certificate of purchase, who gives a deed of trust to secure a loan of money to him, the bill seeking to enforce the second mortgage against such assignee, on the ground that he purchased with money furnished by the mortgagor, the person loaning the money to such assignee, and who is secured by the deed of trust, is not only a proper, but a necessary party.

2. PLEADING AND EVIDENCE. On a bill to foreclose a mortgage, wherein two persons are made defendants who have acquired the legal title under a foreclosure of a prior mortgage, and a sale and assignment of the certificate of purchase, it being charged that the mortgagor furnished them the means to purchase the certificate of sale, and that they hold the legal title in trust for the mortgagor, in which the court finds that one of said persons is a *bona fide* innocent purchaser, and that the other is not, but holds in trust for the mortgagor, the court can not proceed and find the proportion of the land each of said persons holds under their joint purchase where there is no such prayer in the bill, and without proper averments in the bill no such prayer would be appropriate, and such relief could not be granted under the general prayer.

3. JOINT OWNERS—*relative interests.* Where a certificate of purchase is assigned to two persons jointly, upon which a master's deed is executed to them both, so far as third persons are concerned they are to be regarded as joint owners of an equal share, without regard to the amount paid by each for the certificate of purchase.

· 4. SUBROGATION—*to rights of mortgagee.* If one of two mortgagors, after selling out his interest in the mortgaged premises to the other, the latter assuming to pay the mortgage debt, is compelled to pay the debt, or any part of it, he may be subrogated to the rights of the mortgagee or his assignee.

5. FRAUD—*must be clearly proved.* Something more than suspicions are required to prove an allegation of fraud. The evidence must be clear and cogent, and must leave the mind well satisfied that the charge is true.

APPEAL from the Circuit Court of Moultrie county; the Hon. C. B. SMITH, Judge, presiding.

The appellee Horace B. Shinn filed his bill in the circuit court of Moultrie county, at its October term, 1872, to foreclose a mortgage alleged to have been executed to him by the appellant Clement L. Shinn, on the 6th of January, 1865, conveying certain land lying in the county of Moultrie, described in the bill.

The bill alleged that on the 6th of January, 1865, appellant Clement L. Shinn became indebted to complainant in the sum of $5000, secured by three promissory notes, one for $2000, due May 1, 1865, one for $1500, due September 1, 1867, and one for $1500, due September 1, 1868. That the first note for $2000 was paid at maturity, but that the other two, with the interest, remained due and unpaid at the filing of the bill. That for the better security of said notes the appellant Clement L. Shinn, at the said date, executed a mortgage to the complainant of the tract of land described therein, which mortgage remained still unsatisfied.

The bill further stated, that the appellants William H. Shinn, Mary Ann Kenny, and the appellee Albert C. Burnham have some claim as mortgagees, or judgment creditors, or in some form, but subsequent to the mortgage of complainant, and subject to its lien. That William H. and Mary Ann are the children of C. L. Shinn, and that they acquired their interest by a purchase of a certificate of sale from one Thomas B. Trower, who held as purchaser from Ebenezer Noyes of a certain mortgage, which was foreclosed by Trower when he purchased. That the purchase by the said William

and Mary Ann was in fraud of complainant's rights, and asking account of the indebtedness and foreclosure. Thereafter the complainant amended his bill by making the defendant Albert C. Burnham a defendant as the trustee of Austin M. Ward, and Hezekiah M. Ashmore and Jacob Zimmerman defendants, as administrators of H. I. Ashmore, deceased.

The defendants Clement L. Shinn, William H. Shinn and Mary Kenny answer, but the other defendants make default, and there was a decree *pro confesso* as to them.

By his answer the defendant (now appellant) Clement L. Shinn alleges that about the 1st of September, 1864, he formed a partnership with the complainant Horace B. Shinn, for the purpose of buying a sheep farm. That in the execution of this purpose they purchased the tract of land in controversy from one Ebenezer Noyes for $10,800; that of the purchase money $7800 was paid in cash, of which the said Clement L. paid $4300, and the said complainant paid $3500, and for the balance a joint note of $3000, secured by a mortgage on the land, was executed by them to the vendor, Noyes. That by the agreement between them, the appellant Clement L. was to have a two-thirds interest in the land, and the appellee Horace B. was to have one-third; but the deed was made to them jointly. That in pursuance of the partnership agreement the said Clement L. bought about five or six hundred head of sheep to stock the farm, paying therefor, out of his own funds, $2227. That by the mismanagement of the said Horace the sheep depreciated and became a total loss. That he laid out other sums, and lost altogether, by the venture, about $6000, of which he insists Horace ought to bear half the burden.

He admits that on the 6th of January, 1865, he and Horace had a settlement of the land transaction, when he purchased the interest of Horace, giving him therefor three notes, the $2000 note stated in the bill, and the two notes for $1500; but he alleges that one of the notes of $1500 was given to secure the said Horace on his liability upon the joint note of

$3000 held by Noyes, and that by the sale by Trower, and satisfaction of that debt, he is discharged from liability. He also alleges that this transaction related to the land only, and that the partnership transaction as to the stock, etc., did not enter into it, but that the said Horace is still liable to him in an account of those transactions. He admits that on the execution of the three notes and mortgage, the said Horace gave him a quitclaim deed of his interest in the land.

He denies that Horace ever offered to furnish him money to pay off the Noyes mortgage assigned to Trower, as is alleged in the bill, although he appealed to him for assistance, and he then made arrangements with his son, the appellant William H. Shinn, and his daughter, Mary Ann Kenny, wife of Robert M. Kenny, the other appellant, who paid off the purchase money advanced by Trower at the foreclosure sale, and took for it an assignment of his certificate of sale, and when the time of redemption expired they received the master's deed, which they now hold. He denies that he furnished any of the money by which they paid the Trower claim, or that he was able to redeem or pay off the Noyes mortgage, and denies all fraud and all indebtedness to complainant.

The appellants William H. Shinn and Mary Ann Kenny answer, alleging that their co-defendant, C. L. Shinn, on a fair settlement, does not owe complainant anything; but that said complainant is indebted to him. They admit the purchase of the certificate of sale from Trower, but say they paid full consideration, in good faith, out of their own money, and took a deed after the expiration of fifteen months from the date of sale; and they insist that when they purchased the complainant had not any interest in the land.

To these answers there was a replication. Thereafter the appellant Clement L. Shinn filed an amended answer, in which he alleged the joint purchase by him and complainant of the land from Noyes, the execution of the $3000 note and mortgage to Noyes, and the partnership. He alleges also the sale by Noyes of the debt and mortgage to Trower, the fore-

closure by Trower, and his purchase at the foreclosure sale; that there was no redemption within the time by him or Horace, or any one, but that the title legal and equitable vested in Trower. That afterwards Trower sold and assigned the certificate to William H. Shinn and Mary Ann Kenny for a valuable consideration. He alleges the sheep partnership, the loss, and the liability of Horace to account. He denies that within the twelve months Horace offered to aid in discharging the mortgage. He disclaims all title to the land, and denies all fraud.

To which there was a replication.

The appellant Clement L. then filed a cross-bill, setting up the facts alleged in his answer, and claiming to be discharged of the $1500 note, given, as he alleges, to secure Horace against the Noyes liability, and claiming to have account of the whole partnership transaction, and that on such account Horace will be indebted to him.

Horace B. answers this cross-bill, denying that the settlement of 6th January, 1865, related only to the land, but alleging that the contract was that Clement L. would give him the sum of $5300 for all his interest in the partnership, and would pay off all the indebtedness; that he did pay him the three hundred dollars soon after, and at the time gave him the three notes, of which the two notes of $1500 each remain unpaid; and he reiterates that the Trower certificate was bought with the money of Clement L., and that the assignment of the certificate to William H. and Mary Ann was in fraud of his rights.

On the hearing the court below, decree *pro confesso* having been taken against Albert C. Burnham, trustee of Austin M. Ward, and against Hezekiah M. Ashmore and Jacob Zimmerman, administrators of H. I. Ashmore, found the equities of the cause to be with complainant; that the defendant C. L. Shinn is indebted to complainant in the sum of $6267.50; that the purchase of the certificate of sale, in so far as Wm. H. Shinn is concerned, is fraudulent as against complainant;

that said Wm. H. Shinn holds the title by him acquired in the land in trust for the defendant C. L. Shinn, and subject to the lien of complainant's mortgage; that Mary A. Kenny is an innocent purchaser, and holds her proportion of the land, and the court proceeds to ascertain the several proportions of the said Mary Ann and William H., assigning to the former one hundred and twenty acres, and to the latter two hundred and eighty, undivided each. And the court further proceeds to find that the mortgage given to Albert C. Burnham as trustee of Austin M. Ward, is junior to complainant's and that complainant's is a prior lien.

And it was decreed that the appellant Mary Ann have title in the 120 acres, undivided, discharged of complainant's mortgage; that the cross-bill of Clement L. Shinn be dismissed at his costs; that Clement L. or W. H. Shinn pay to complainant the amount set forth within sixty days, or that the land be sold for satisfaction, etc.

Messrs. CRAIG & LEITCH, for the appellants.

Mr. JOHN R. EDEN, and Messrs. A. C. & I. J. MOUSER, for the appellees.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

There are two errors, we think, in the finding and decree of the court below, for which the decree must be reversed and the cause remanded for further proceedings.

It appears that there was a mortgage executed by William H. Shinn and Mary A. Kenny to Albert C. Burnham, as trustee for Austin M. Ward, of a date subsequent to the mortgage by Clement L. Shinn to Horace B., and subsequent to the purchase by the said William H. and Mary Ann, and to the execution by the master of his deed to them, for a loan of five thousand dollars made to them by Ward. Ward has, then, an equitable interest in the lands, derived from those holding the legal title, and this equitable interest is adverse

to the complainant's, and well might have been the subject of
a cross-bill by Ward. The decree directly affects his security,
for it subordinates him to the demand of Horace on two hun-
dred and eighty acres, if it does not entirely throw him upon
the one hundred and twenty acres assigned to Mrs. Kenny.
We think he was not only a proper but a necessary party, and
is entitled to be heard before a final decree.

We are at a loss to see how the court below could assign
the proportionate interests of William H. Shinn and Mary
Ann Kenny at all under the pleadings. There is no prayer
for such a proceeding, and no allegation in the pleadings out
of which a prayer of this kind would be appropriate, and un-
der a prayer for general relief the proceeding is not pertinent.

Nor do we see the basis proper for such an allotment as the
court has made on its finding. By the deed of the master,
and by the assignment of the certificate, she is a joint owner
of an equal share. If she was an innocent purchaser, her title
must be maintained to the undivided moiety. Her title is not
dependent upon the amount she paid, nor is it to be measured
in value by this amount. If *bona fide,* it is good in the en-
tirety, as the deed fixes it; and the court, having found it to
be a *bona fide* title, held by an innocent purchaser, free of
fraud, could not proceed to alter and diminish the estate it
confers.

But there are yet grave questions in the case, and as it is
desirable to have a full and final disposition of it when reached
again in the court below, we must proceed to consider them.

The cross-bill of Clement L. Shinn presents the question of
the partnership between him and Horace B., the complainant
in the original bill.

There is no doubt there was a co-partnership, commencing
in September, 1864, and continuing to January 6, 1865, when
it was terminated, by the consent of parties, and on an express
agreement. This partnership not only extended to the land
in question and its purchase, but to its use as a sheep farm,
and to the purchase of sheep for stocking it; and there is no

doubt that the appellee Horace was a one-half owner of the interests in this undertaking, and was jointly liable for the losses, and is so still, unless discharged. It is equally clear that a flock of sheep, numbering over 500, was purchased by the partners, in 1864, for about $2227, which purchase money was paid by appellant Clement L. Shinn, and that there was a substantial loss by this purchase, as well as outlays, by said appellant. But appellee alleges that all this was settled by the agreement of the 6th of January, 1865, whereby he sold to appellant his interests in the partnership, quitclaimed the land, and took the notes and the mortgage. He says it was part of this agreement that the appellant should assume all the indebtedness of the partnership, and he should be discharged. Appellant denies this, and says that settlement related only to the land.

It is true that Clement L. Shinn swears to the truth of his statement, and he is fortified by the statement, under oath, of his son, the appellant Wm. H. Shinn, who details the conversations as he heard them between the parties; but the circumstances so strongly sustain the contrary statement by Horace, that we think the weight of evidence is with him. It is not likely that, with such losses already incurred in a joint adventure, Clement L. Shinn would have put an additional mortgage of $5000 on his farm, leaving open to future ascertainment and settlement the partnership in other matters, with no security for these losses, and no mention of any liability. Clement L. Shinn is also clearly mistaken in his statement that $3500 was given to cover the price paid by Horace on the land, and the other $1500 to secure him against his liability on the $3000 mortgage.

In the first place, $5000 was not the sum actually passed between the parties. There was, undoubtedly, $300 more, for this amount appears to have been shortly thereafter paid. Besides, the note of Clement L., merely secured by a second mortgage on the same land, would be no additional guaranty against the payment by Horace of the $3000 note, or of his

share of it, since, if Horace had, at any time, been called to pay the whole or part, he might have been subrogated at once to the rights of the mortgagee or assignee.

Again, the quitclaim deed of Horace of all his interests in the land, his return to his home, the several interviews between him and appellant Clement, when he never made mention of any partnership claim as far as we can see, the silence of appellant in all his letters in relation thereto, the language of his appeals for aid concerning the land, his offers to allow Horace the last cent,—all these circumstances contradict, potentially, any idea that there yet remained any settlement to be made of other partnership transactions, or any further liability thereon of the appellee Horace B. Shinn.

We think, therefore, the cross-bill of Clement L. Shinn was properly dismissed.

We come, now, to the question of the purchase of the certificate of sale by William H. Shinn and Mary A. Kenny, the assignment to them, and the deed of the master, whereby they are made tenants in common of the legal title in the land in controversy.

We are satisfied with the finding of the court as to the title of Mary A. Kenny, in so far as the matter of fraud is concerned. It is proved that her husband paid a valuable consideration for her benefit for the land, on an agreement between her and William H., out of his own funds; and the evidence justifies the finding that she is an innocent holder. There is evidence of other payments by her, and we think her title to the undivided moiety has not been impeached. About the title of Wm. H. Shinn to the other moiety there is more doubt.

It appears that Ebenezer Noyes assigned the notes and mortgage of Clement L. and Horace B. Shinn, and about the 11th of December, 1867, the land was sold at foreclosure sale, when the assignee of the mortgage, Thomas B. Trower, became the highest bidder, and received a certificate of purchase. The effect of this sale was to cut out the subsequent mortgage of Horace B. Shinn, and to leave him, as other creditors, only

the right of redemption. This is fortified by the fact that he had been made a party to the foreclosure proceeding, and had suffered default.

The premises sold for $4702.76. It is proved that, after this, Wm. H. Shinn and Mary A. Kenny bought of Trower this certificate of purchase, and paid therefor $5140.70, and the certificate was assigned to them as joint owners. But it is said that the money paid by Wm. H. Shinn was furnished by the appellant Clement L. Shinn, who is his father, and was the mortgagor in the deed to the appellee Horace B.,—in other words, that the payment by William was a cover, and amounted to no more than a redemption by Clement L. to that extent, William H. becoming his trustee of the legal title; and there are many suspicious circumstances which, taken alone, would seem to justify this allegation.

But something more than suspicions are required to prove an allegation of fraud. The evidence must be clear and cogent, and must leave the mind well satisfied that the allegation is true.

In the face of all the evidence in this case, we can not say that we are so satisfied. William H. Shinn appears to have been an enterprising and industrious young man. His business engagements are proved to have been numerous and important,—in various enterprises. He is proved, also, to have had credit, and neither his character for integrity nor that of his father is impeached. Both of them swear, whenever interrogated thereto, that none of the money of the father entered into this purchase; that although the deposits were made in the Bank of Mattoon in the name of the father, the money was really the property of the son, and explanation is given of the sources from which these sums were derived. That the father gave him five hundred dollars' worth of property in February, 1869, was no evidence of fraud, as touching this matter. He had the right to rent from his father, as he did in 1869 and 1870, and he was entitled to the profits of his labor. The sale of the personal property was openly made,

and the sale notes were taken by him, held by him without question of any body, and were by him deposited with Walker as collateral security for the $1500 loan, and their proceeds were applied by him towards the payment of the Hinton debt, and it appears that the proceeds of the Hinton loan were applied in replacing money borrowed by him with which to pay Trower.   He had, also, the corn at Summit, which was applied in like manner.   It is quite manifest that the Shelly loan was replaced by him, and, as he swears, all the money borrowed by himself and Mary A. Kenny had been repaid by them, except a small balance still due.

As we said, there is the positive testimony of both father and son that the former did not furnish any money, but the latter, out of his own means, did furnish it, and this sworn statement is corroborated by the unimpeached character of the witnesses, and by the many circumstances which we have stated, and only assailed by certain other circumstances to which we have alluded, which, though in themselves suspicious, are not sufficient as we think to establish the allegation that the purchase of the land by Wm. H. Shinn was fraudulent; and we therefore reverse the decree below for error in this particular, and remand the cause for further proceedings in consonance with this opinion.

*Decree reversed.*