WILLIAM BOURKE, Appellant, *vs.* WILLIAM KISSACK, Trustee, *et al.* Appellees.

*Opinion filed October 26, 1909—Rehearing denied Dec. 9, 1909.*

1. SPECIFIC PERFORMANCE—*the vendor should furnish abstract of title if he has agreed to do so.* The vendor in a contract for the sale of land must furnish an abstract of title if he has agreed to do so, and he cannot, by failing to deliver the abstract, put the vendees in default.

2. SAME—*when extension agreement is valid.* If the vendor, the day before the expiration of the sixty days allowed the vendees to deposit the purchase money, agrees verbally to extend the time for the vendees' performance to enable them to have examined the abstract of title to be furnished by him, the fact that the period of such extension was not definitely fixed until the day after the expiration of the sixty days, at which time it was fixed at thirty days and the abstract of title delivered, does not render the extension agreement invalid.

3. SAME—*original agreement is not abrogated before contemplated new agreement is executed.* A contract for the sale of land, as extended by verbal agreement of the parties, is not abrogated by a contemplated new agreement relating to the property, which was talked over by the parties and drawn up but never executed.

APPEAL from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.

This is an appeal from a decree of the circuit court of Cook county for the specific performance of a contract to convey real estate. The case was in this court at a former term upon an appeal from a decree sustaining a demurrer to the bill and dismissing it for want of equity. (*Kissack v. Bourke*, 224 Ill. 352.) The substance of the amended bill, to which the demurrer was sustained, will be found in the opinion then delivered.

The agreement which it was sought to compel the specific performance of was as follows:

"In consideration of $100 to me in hand paid by William Kissack, trustee, the receipt whereof is hereby acknowledged, I agree to sell and convey to said William Kissack, trustee, the remaining seventy-nine acres of land, more or less, of the farm owned by me in the town of Algonquin, in McHenry county, Illinois, (after deducting the portion heretofore sold by me to said William Kissack, trustee,) for the sum of $9900, provided said William Kissack deposits said sum of $9900 for said land with the First National Bank of Elgin, Illinois, within sixty days after the date hereof, to be delivered to me by said bank on receipt of a warranty deed from me to said William Kissack, trustee, of said seventy-nine acres of land, more or less, free and clear of all encumbrances, (except that said deed shall be made subject to the interest of Henry Dahn, as tenant of said premises,) with the abstract of title to said premises now owned by me brought down to date; but in case said William Kissack, trustee, shall fail to deposit the. sum of $9900 with said bank, as aforesaid, within sixty days from this date, this instrument is to be returned to me by said bank, where it is to be deposited and held in the meantime.

"Dated this 27th day of October, A. D. 1905.

(Seal)        WILLIAM BOURKE."

We held that the allegations of the bill, as presented when the case was before us at a former term, were sufficient to entitle complainants (appellees here) to the relief prayed if the allegations were established by proof. Upon the case being re-instated in the circuit court the bill was further amended. The material difference between the bill as finally amended and the bill as presented to this court on the former hearing is, that the bill on the former hearing alleged that one of complainants and defendant met in Elgin

on December 26, 1905, for the purpose of closing the sale of the land under the contract; that the defendant presented an abstract of title to the premises which showed his title thereto to be defective, and that it was mutually agreed between the parties that the time for the consummation of the contract for the conveyance of the land should be extended thirty days from that date. The bill then contained the further averment that within the time of said extension complainants offered to pay the balance on the purchase of the land and accept defendant's deed therefor, but that he refused to accept the money and make the deed. As finally amended the bill alleged that in the latter part of December, 1905, and prior to the 24th day of said month, complainants (who will hereafter be called appellees) requested defendant (hereafter called appellant) to furnish them the abstract provided for in the contract, so they might have it examined; that appellees stated to appellant that they were unwilling to pay the balance of the purchase money ($9900) until they had been furnished the abstract and had it examined; that appellant then stated he did not have the abstract in Chicago, where all the parties resided and were engaged in business, but that it was in Elgin, Illinois, and that on account of his delay in furnishing the abstract he would give appellees additional reasonable time, after the expiration of the sixty days named in the agreement, to consummate the transaction, and would meet one of appellees at the office of his attorneys, in Elgin, and deliver him the abstract for examination. The bill alleges that appellant did meet one of appellees at his attorneys' office in Elgin, on December 28, 1905, and that they then and there agreed upon thirty days' extension of the written agreement as a reasonable time in which to have the abstract of title examined and pay the $9900; that at the request of appellant his attorneys went to the cashier of the bank with whom the contract had been left in escrow, to procure it for the purpose of endorsing thereon the extension agreed

upon, but that the said cashier was absent and the contract could not be procured. The bill further alleges that on said 28th day of December, 1905, appellant delivered to appellees what purported to be an abstract of title to the land, but it was only brought down to February 15, 1901; that appellees sent it to their attorney for examination, and he reported, on or about January 5, 1906, that the title was substantially good in appellant, subject to an encumbrance of $2500. The remaining allegations of the bill as to the readiness and the offer of appellees, within the thirty days' extension, to pay the $9900 and accept a deed from appellant are substantially, if not precisely, the same as in the bill before us at a former term.

After answer and replication filed, the case was referred to a master in chancery to take the testimony and report his conclusions of law and fact. The master reported that appellees were entitled to a decree in accordance with the prayer of their bill. Exceptions of appellant to the master's report were overruled by the court and a decree entered requiring appellant to accept the balance of the purchase money, $9900, and execute a conveyance to the appellees. This appeal is prosecuted from that decree.

JAMES F. CASEY, and LESLIE H. WHIPP, for appellant.

J. A. COLEMAN, and V. S. LUMLEY, for appellees.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

The original report of the master in chancery recommending a decree in favor of appellees set out the substance of the material testimony heard by him but was somewhat indefinite as to whether appellant, prior to the expiration of the sixty days limited by the written instrument, waived the right to forfeit it if not performed by appellees within that time and expressly or impliedly agreed

to an extension, as alleged in the bill. The original report recited the substance of the testimony offered by appellees upon this subject but did not definitely state what it proved. The cause was re-referred to said master, with directions that he report his findings from the evidence upon this question more specifically. In a supplemental report the master again recited, and more fully, the evidence of the respective parties on this subject, and found therefrom that the conversation between the parties which appellees relied upon as an extension of the written agreement and a waiver by appellant of his right to forfeit it occurred prior to the expiration of the sixty days fixed by the written instrument, and that what was said between the parties amounted to an extension of the written instrument and estopped appellant from denying such extension when the parties met, December 28, 1905. The meeting of the parties December 28, 1905, was at the office of appellant's attorneys, in the city of Elgin. The master reports that the evidence was conflicting as to what occurred there, and, after setting out the substance of it, finds that an agreement was made between the parties at that time for an extension of the written instrument thirty days, and that the consideration for said extension was the mutual promises of the respective parties and was a good consideration. The abstract of title to the premises was never delivered by appellant to appellees until the 28th of December, 1905, the date at which the alleged extension was agreed upon. The master finds, from the evidence, that within thirty days from December 28, 1905, appellees notified appellant that they had the abstract examined and would accept a deed from him, and offered to pay him the $9900 or deposit it to his credit in the First National Bank of Elgin, but that he refused to accept the money and make the conveyance, and stated that he had been offered more money ($16,000) for the land and would not perform the agreement, which he claimed had expired by its terms. The master further finds that appellees were

able to perform their offer to pay the money upon the conveyance being executed, and that they were entitled to a decree requiring the conveyance to be made.

The validity of an extension, not in writing, of the written agreement, if made before the expiration of the time limited in the written instrument, was settled in our former opinion in this case. The only difference between the bill then before us and the case made by the proof under the amended bill is, that when the bill was first before us it alleged that the meeting between the parties at which the thirty days' extension was agreed to, occurred December 26, 1905, while the bill as finally amended alleges, and the proof thereunder shows, that this meeting occurred December 28, 1905, and was after the expiration of the sixty days limited by the written instrument. The amended bill alleged, and the proof showed, however, that prior to the expiration of the sixty days fixed by the written instrument appellees talked to appellant over the telephone and reminded him that the time for the performance of the agreement was about to expire; that he had not furnished the abstract as agreed; that they desired to have it examined before completing the transaction and asked that it be furnished them. Appellant replied that he had not been able to lay his hands upon it up to that time but that he would give appellees time to have the abstract examined. No definite time was mentioned by the parties in this conversation, but on December 28, 1905, the parties met and agreed upon a definite period of thirty days. Appellant contradicted the testimony of appellees that he agreed to give them time to have the abstract examined or that he agreed to the extension of thirty days, but we think the testimony warranted the master in finding that he did agree to give appellees time to have the abstract examined and to the definite period of thirty days at the meeting of December 28, and that he was estopped from forfeiting the written agreement on the ground that appellees had not com-

plied with it within the time fixed by it. The weight of the proof shows that appellant was responsible for appellees' failure to perform the acts required of them within the sixty days fixed by the written instrument, by the failure on his part to furnish them an abstract of title, as he agreed to do. In our opinion the case made by the proof as to the extension agreement is not essentially different from that made by the allegations of the bill when the case was before us the first time, and it is governed by the same principles announced and authorities cited in the opinion then rendered.

Much importance is placed by appellant upon a written instrument prepared by one of the attorneys of appellant in pursuance of his directions, and a conversation with reference thereto had between him and one of appellees in the office of appellant's attorneys at the time the thirty days' extension was agreed to. It appears from the proof that after the extension had been agreed to and after the failure to procure the original agreement for the purpose of endorsing it thereon, a further conversation was had between appellant and one of appellees with reference to a purchase of the land by appellees, the consideration to be paid in installments extending over a period of some years and to be secured by mortgage on the seventy-nine acres and an additional twenty and one-half acres which appellees were in possession of and which was occupied by the plant of the American Torpedo Sand Company, in which they were interested. Appellant directed one of his attorneys to prepare an agreement for the sale by him to appellees of the premises, in accordance with the terms talked of between him and one of appellees at the time, and send it to appellant at Chicago. This the attorney did, but the agreement was never signed. The master found that this talked-of agreement, never having been consummated, did not abrogate the written agreement of October 25, 1905, and the extension thereof. The proof, in our opinion, war-

rants the conclusion that the extension of the written agreement of October 25, 1905, would remain in force until the other agreement was executed by the parties.  *McDavid* v. *Sutton*, 205 Ill. 544.

We think the conclusions of the master, and the decree confirming his report and granting the relief prayed, were justified by the law and evidence, and the decree is affirmed.

*Decree affirmed.*