(No. 25248.—

EARLE D. PARKER *et al.* Appellants, *vs.* MARY DAMEIKA *et al.* Appellees.

*Opinion filed October 13, 1939.*

WELSH & WELSH, (R. T. WELSH, of counsel,) for appellants.

B. JAY KNIGHT, J. E. GOEMBEL, and FREDERICK H. HAYE, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Winnebago county denying specific performance of an option contract for the sale of two tracts of land. The contract was signed by appellees. Mary and Anthony Dameika. George Dobler, the other contracting party, assigned the contract to appellants Earle D. Parker and Geraldine S. Parker.

The material allegations of the complaint are: Appellees on September 8, 1938, owned in fee the two tracts of land described. On that date, for $2, they executed the contract wherein they agreed to hold the lands described until December 6, 1938, subject to the order of Dobler or his assigns. If the option was exercised in time they would convey by deed for $2000. Dobler gave appellees notice of his election to exercise the option and November 14, 1938, tendered the purchase price and demanded a deed. Appellees then refused to perform their part of the contract.

The answer admitted the foregoing allegations but as an affirmative defense alleged that appellees owned a farm of 200 acres located near the two tracts described; that the three tracts had been operated as one farm, the larger being adapted to the growing of crops and the two tracts with an acreage of 24 and 32 acres, respectively, being suitable for grazing, and that the separation of the two from the larger would interfere with the successful operation of the 200 acres. It is alleged that appellees told Dobler they did not wish to sell the two tracts unless they could also dispose of the 200 acres; that prior to and at the time of the execution of the contract, Dobler represented to appellees that he had a purchaser for the 200 acres and if they would sign the option contract for the two small tracts he would produce a purchaser for the 200 acres who would be ready, able and willing to buy at the time of the consummation of the sale of the two tracts. Appellees alleged they could not read or write the English language.

It was not stated their lack of understanding of the English language prevented them from acquiring the knowledge of the provisions of the contract in some other way. The decree appealed from, contains a finding that the contract was not "entered into understandingly."

Appellees testified they did not understand the contract and at the time of its execution did not know it was without provisions for the sale of the 200 acres. They would not have signed had they known such fact.

Appellants contend the decree cannot be sustained on the ground appellees did not understand the contract because such defense was not alleged in the answer. The execution of the contract being admitted in the answer, they say such admission carried with it the assumption that, at the time of the signing, appellees knew and understood the contract contained no provisions for the sale of the 200 acres.

The claim that they did not understand the contract and did not know that no provisions had been made for the sale of the 200 acres, was an affirmative defense. (*Chicago Title and Trust Co.* v. *Illinois Merchants Trust Co.* 329 Ill. 334.) Sub-paragraph four of section 43 of chapter 110 of the statutes (Ill. Rev. Stat. 1937, chap. 110, par. 167) provides that any affirmative defense, and any defense which, by other affirmative matter, seeks to avoid the legal effect of or defeat the cause of action set forth in the pleading of the opposing party and which would be likely to take the opposite party by surprise, must be plainly set forth in the answer and reply. Prior to the adoption of the Civil Practice act, the rule in chancery was that the answer of the defendant must definitely inform the adverse party and the court of the facts relied upon for a defense, and the defendant could not avail himself of any matter of defense which was not stated in his answer even though it appeared in the evidence. (*Crone* v. *Crone,* 180 Ill. 599; *Millard* v. *Millard,* 221 id. 86; *Mitchell* v. *Clem,* 295 id. 150.) Sub-

paragraph 4 of section 43, *supra,* has not changed the rule of pleading as applied to matters of defense of an affirmative nature. Likewise, the consequences which follow a failure to observe the statute have not changed from the rule which prevailed prior to the adoption of the Civil Practice act. The defense of lack of understanding is not available to appellees.

The remaining defense set forth affirmatively in the answer is that appellees signed the contract relying on Dobler's verbal representation he had a purchaser who would be ready and able to purchase the 200 acres at the same time the sale was consummated for the two small tracts. The decree contains no finding as to the alleged fraud or misrepresentation of Dobler but in the opinion, as incorporated in the abstract, the court stated there was no evidence of Dobler having acted fraudulently. The evidence shows Dobler was a real estate broker and was engaged in acquiring for appellants an area of land to be used as a game preserve. Previous to the time he began negotiations with appellees, he had contracted for other lands and sought to buy appellees' land for the purpose of making a compact and contiguous area. Appellees were aged Lithuanians and could not understand the English language. They had two grown sons and a daughter, all of whom were born in this country and attended the public schools, and the daughter was a high school graduate. Dobler's negotiations leading to the execution of the contract were with Tony Dameika, appellees' son. A part of the discussion was in the presence of the appellees but it does not appear they took any part in any of the conversation. Tony testified that he informed his parents as to a part of the discussion with Dobler. There is a conflict in the evidence of Dobler and Tony as to the making of the alleged misrepresentations by Dobler. There is no dispute that during the negotiations for the two tracts Tony stated to Dobler that they would like to sell the 200 acres and gave as a

reason that they were located such a distance from the farm upon which appellees resided that it was inconvenient to manage and operate them. During the negotiations as to the two tracts and the discussion about the sale of 200 acres, Dobler made inquiry as to the ownership of the personal property on the farm and whether it could be sold with the farm. He stated that sometimes land will sell better if the personal property is included. A list of the personal property was not then available but one was prepared and handed to Dobler by appellees' son after the execution of the contract. It is significant that the evidence does not disclose that Dobler or appellees or their son had any discussion as to the sale price of the 200 acres or as to the terms of payment. The evidence indicates that at the time of the signing of the contract, the discussion in reference to the sale of the 200 acres was with the understanding that Dobler would subsequently find a purchaser who would be ready and willing to take the land upon terms to be agreed upon between the purchaser and the appellees. As further evidence that such was the understanding of the parties is the action of appellees in the signing of an application addressed to the mortgagee for a partial release of the mortgage lien. The mortgage lien conveyed the 200-acre farm and one of the smaller tracts. At the time of the negotiations there was a discussion with Dobler and Tony as to the necessity of getting a release for the small tract and the amount of the purchase price that the mortgagee would demand for such release. The release was executed five days after the contract and recited that the tract was being sold to appellants as a game preserve. Dobler was not present when the application for release was executed.

Under the evidence the chancellor was correct in his conclusion that fraud had not been proved. Fraud is not presumed and is an affirmative defense, which must be proved like any other fact. (*Brady* v. *Cole*, 164 Ill. 116;

240

*Woodrow* v. *Quaid,* 292 id. 27.) A mere suspicion of fraud is not sufficient, but if it exists, it must be satisfactorily shown. (*Union Nat. Bank* v. *State Nat. Bank,* 168 Ill. 256.) The evidence must be clear and cogent and must leave the mind well satisfied that the allegations are true. *Shinn* v. *Shinn,* 91 Ill. 477.

There was no proof of fraud and misrepresentation and the defense of lack of understanding is not available to appellees. There is a rule that where a contract for the sale of real estate is entered into without misunderstanding on the part of the vendee and without misrepresentation on the part of the vendor, specific performance will be granted as a· matter of right and not as a matter of discretion. *Mackie* v. *Schoenstadt,* 307 Ill. 398; *Gottlieb* v. *Kaplan,* 319 id. 60.

For the reasons assigned, the decree of the circuit court is reversed and the cause remanded, with directions to enter a decree for specific performance of the contract.

*Reversed and remanded, with directions.*