Jerry Tolbird and Lora Tolbird, Plaintiffs-Appellants, v. James M. Howard and Alma R. Howard, Defendants-Appellees.

Gen. No. 10,934.

Fourth District.

December 2,1968.

Roberts and Kepner, of Springfield (Maurice Kepner, of counsel), for appellants.

Carlon and Carlon, of Normal (Patricia Carlon, of counsel), for appellees.

TRAPP, J.

Judgment was entered in favor of the defendants, James M. Howard and Alma R. Howard, herein called buyers, and against the plaintiffs, Jerry Tolbird and Lora Tolbird, herein called sellers, in the Magistrates' Division,

Circuit Court of Sangamon County, in an action upon a promissory note for down payment on a real estate contract, and to recover past due installments upon such contract.

The complaint is based upon two documents which represent the terms of sale of a house and lot in Illiopolis, Illinois. Both documents are dated July 10, 1966. The defendants, buyers, signed a judgment note for $552 in favor of the plaintiffs, sellers, which note bore an indorsement that it was due January 1, 1967. The buyers and sellers signed a contract to purchase the property for the sum of $20,469.78 in monthly installments of $184, which were to include principal and interest at 6% per annum, interest to be calculated upon a direct reduction basis. The first installment was due July 15, 1966. The contract provided: "If not sooner paid, the entire amount of principal and interest shall be due and payable June 15, 1986."

The contract provided that in case of default of more than 30 days, "Sellers, at their option, may declare this contract to be null and void, and he may take repossession of said above described real estate immediately thereafter; No notice, either in writing or orally, need be given by Sellers in case of default; In such event all installment payments previously made by Buyers shall be retained by Sellers as and for rental payments and all liquidated damages under this Contract."

The contract provided: "That Buyers agree to carry said insurance premiums hereafter until the purchase price is paid, for the protection of Sellers, in whose names said insurance shall be carried." At the time of closing the contract with all persons present, except Lora Tolbird, the following clause was added to the end of the above quoted clause, at the buyers' request: "Payable to all parties as their interests may appear."

The answer of the buyers to Count II, which is the suit for past due installments on the contract, admits the

signing of the contract, the making of the first installment payment of $184 on July 15, 1966, and the failure to make any additional payments. The answer denies performance by sellers, and sets up the following special defenses: (1) that sellers have repossessed the premises and retained the rentals paid as liquidated damages; (2) that sellers failed to furnish proof of ownership of the property; (3) that sellers fraudulently induced buyers to believe sellers were owners of the property; (4) that buyers cannot be in default until June 15, 1986. On the trial the additional defense was made that the insertion of the addition to the insurance clause was a material alteration which rendered the contract unenforceable.

Since there are questions of law, mixed questions of law and fact, defenses which, if sustained, are a permanent bar to the suit and a defense that bringing the suit is premature, the simple judgment that sellers take nothing by their suit leaves much to be desired.

The judgment that sellers take nothing by their suit would appear to be final and to indicate that the trial court found that the contract was unenforceable, rather than that the suit was premature. However, buyers pursue the point in their briefs in this court. Reading the contract as a whole, we cannot subscribe to the position that no recovery could be had prior to June 15, 1986. The contract, as noted, provided for monthly installments, provided a 30-day grace period on default, and provided for an election to retake possession and retain payments as liquidated damages. The position that no suit could be brought until June 15, 1986, would mean that no payments were legally due until June 15, 1986. We find this to be inconsistent with the allowance of a grace period of 30 days, "in case of default of *any* payment." (Emphasis supplied.)

The defense of material alteration of the contract in reference to the addition to the insurance clause was not pleaded, and under Ill Rev Stats c 110, § 43(4), was not available as a defense. See also Parker v.

240

Dameika, 372 Ill 235, 23 NE2d 52; Burke v. Burke, 12 Ill2d 483, 147 NE2d 373. Again, we are unable to determine whether this defense was considered. The evidence clearly shows that buyers requested the insertion of the clause and that it was for their benefit. The law does not permit the one who alters a contract to avoid it on that account, but confers the right of avoidance upon the nonconsenting party. See Alteration of Instruments, 2 ILP, 24, 31. Since there is no evidence that Lora Tolbird, a party-plaintiff seeking to enforce the contract, dissented from the provision, we cannot find that there is a proper dissenting party. Additionally, under the circumstances, we do not believe that the sellers could claim any proceeds of insurance in excess of the balance due upon the contract. Therefore, the alteration could not be a material alteration. McCrystall v. Connor, 331 Ill 107 at 123, 162 NE 375. See also, Cities Service Oil Co. v. Viering, 404 Ill 538, p 547, 89 NE2d 392.

█ We cannot agree with the defense that sellers elected to forfeit the contract and retain payments made as liquidated damages. The evidence shows that subsequent to a telephone conversation about August 15, 1966, when the buyer advised seller he was moving, the seller wrote the buyer that this would not void the contract, and that sale of the house would be the buyer's responsibility. A declaration of forfeiture should be evidenced by a clear declaration of the seller. Brown v. Jurczak, 397 Ill 532, 74 NE2d 821. The form of the contract gives an election to terminate. In the absence of an election, the contract would remain in force. The evidence is that buyer, James Howard, received the letter from Jerry Tolbird, seller, advising him that the contract was not void, and the sale of the house was Howard's responsibility. He also received a letter dated January 6, 1967, from Tolbird's attorney, demanding payments due under the contract. On January 9, 1967, the Howard's attorney wrote Tolbird's attorney, stating that it was his understanding that the Tolbirds had exercised their option under Section

3 of the contract to terminate it. The letter further stated that, even considering the contract in force, there could be no default prior to June 15, 1986. The complaint was filed February 3, 1967. The evidence shows that about one week after the August, 1966, letter advising Howard that the contract was not void, Howard mailed the keys to Jerry Tolbird. Tolbird went to the house and found it vacant. He closed some windows and some doors, and later had a plumber shut the water off. The next communication between the parties was the letter from Tolbird's attorney to Howard demanding payment.

It is contended that the action of closing up the house and turning the water off, together with a failure to return the keys and a lack of communication for six months constituted the exercise of an election to forfeit.

The contract contained no acceleration clause as to the entire principal on default, and accordingly payments would accrue at $184 per month. The down payment note of $552 was due January 1, 1967. Jerry Tolbird testified that during the telephone conversation in August, Howard said he would pay the $552 in January, but would not make any more payments. Howard says the $552 note was discussed in the August, 1966, telephone conversation and he, Howard, said, if he owed it, he would pay it.

The foregoing circumstances do not constitute anything more than actions to protect a security interest in property. They do not constitute the clear election to forfeit required by the law. We do not think that the buyers' actions show that they thought the contract was terminated by the election of the sellers, but rather that buyers did not intend to perform the contract. Since the note, if due, was not payable until January 1, 1967, and since only $184 per month accrued as a liability, we do not find that waiting until January 6, 1967, to demand payment of the note and the accrued installments was an abandonment of a position that the contract was still in force. On this issue we are concerned with the intention of the sellers. The sellers made no move to rent the

242

house, or to resell the house, or otherwise exercise dominion over it. Their only declared intentions were that the contract was not void, and that the payments were due.

We hold that the contract was not terminated by election of the sellers. Again, we do not know the determination of the trial court on this issue.

Examining the defense that sellers fraudulently induced buyers to believe that sellers were the owners of the property, so far as the evidence shows, there is an abstract showing title in the sellers subject to a mortgage to Lincoln Douglas Savings and Loan for $21,000. Buyers do not pursue this point in their briefs in this court.

We are next presented with a difficult issue which, in fact, is never clearly stated by the parties. The defense is stated in the answer:

> "That the Plaintiffs have breached said contract by their failure to offer any evidence of title and ownership in said property to the Defendants."

This defense is stated in the defendants' brief as follows:

> "The position of the Defendants is simple and clear, the Plaintiffs may not maintain their action on the contract for non-payment of installments because they themselves are in breach under the terms of the contract for failure to deliver an abstract of title brought down to date agreed to in the contract *and as implied in the conversation contemporaneous with the execution of the contract.*
>
> "The defendants have rescinded the contract for Plaintiff's breach thereof." (Emphasis supplied.)

The contract provision as to title is:

> "8. That, Sellers herein agree to furnish Buyers with a Warranty Deed to the above described property upon the completion of the terms of this Contract and the payment of the purchase price in full, plus

243

interest; Sellers further agree that they will furnish a complete Abstract of Title to said real estate showing good and merchantable title in Sellers to date."

In the argument buyer first takes the position that furnishing an abstract to date by seller is a condition precedent to performance by buyer. They cite Hayne v. Fenton, 321 Ill 442, 151 NE 877, which was a contract for sale of farmland "by warranty deed and to furnish abstracts showing good and merchantable title, and to deliver possession upon payment of the purchase price March 1, 1921." An abstract was furnished long before March 1, 1921, but it showed a break in the chain of title and a pending partition suit. Schreiber v. Straus, 147 Ill App 581, is a case of contract for sale of Lots 29 and 31 where the abstract produced covered only part of Lot 31, and the court held such failure to furnish an abstract to all of the property sold could not be excused. In Slezak v. Fleming, 392 Ill 387, 389, 64 NE2d 734, the contract provided that the seller should, "within fifteen days, furnish a merchantable abstract of title or a Chicago Title & Trust Company guaranty policy, and further that when said title papers have been furnished, the Buyer shall close the deal within ten days if the title is merchantable." The court held that under this contract, buyer had ten days after the furnishing of title evidence to put up the purchase price. In Carver v. Van Arsdale, 312 Ill 220, 226, 143 NE 579, the contract provided that an abstract should be furnished by January 1, 1921. On January 26, 1921, the attorney wrote advising that the title was good but subject to certain incumbrances. Carver, the seller, wrote Van Arsdale, the buyer: "You must live up to your contract; will be there March 1 with the papers." The contract called for closing March 1, 1921. On March 1, 1921, they met but Carver did not have the deed or abstract with him. On March 2, Carver went to buyer's house and handed buyer a deed, note and mortgage, but did not have the abstract. Prior to suit the

abstract was brought down to date. The court held when vendor seeks specific performance he must be in a position at a proper time, to perform. Seller did not have abstract on March 1, or the following day, and this was enough to defeat specific performance. Brewer v. Fox, 62 Ill App 609, while referring to the custom of furnishing abstracts is in no way applicable to the issues here. In Geithman v. Eichler, 265 Ill 579, 107 NE 180, the abstract furnished had a breach in the chain from Noah C. Anderson to Noah C. Amsden. The court held the purchaser was entitled to be furnished with an abstract showing merchantable title in the seller at closing.

In all of these cases there was a clear indication in the contract that satisfactory evidence of title and, a sufficient deed were to be furnished before the payment which the seller sought from the buyer was to be made. Here the deed was to be delivered upon *completion of the installments. No date* is given for furnishing an abstract.

Christopher v. West, 409 Ill 131 on 136, 98 NE2d 722, holds that one who seeks performance of a contract must show that he has performed every act on his part to perform, while one who seeks to rescind a contract need only show nonperformance or inability to perform by the other.

Coney v. Rockford Life Ins. Co., 67 Ill App2d 395, 214 NE2d 1, holds that where one party understood an agreement in a particular sense and the other party knew it to be so understood, the contract will be so construed if it is compatible with the language used. See also, Geithman v. Eichler, 265 Ill 579, 584, 585, 107 NE 180.

Seller, Jerry Tolbird, states that about a week before July 10, 1966, he had a conversation with the Howards, and seller told them to see Attorney Mills or get their own attorney. A week after the first conversation, seller, Jerry Tolbird, took the contract, which his wife had signed at Jacksonville, to Illiopolis, and he and the pur-

chasers signed it there. Seller advised Howard he would put the deed in escrow at the bank. Howard gave seller $15 for the bank's escrow fee. Arrangement was made with the Howards to mail their payments to the Savings Association which held the mortgage. Seller had a telephone conversation with Howard about August 15th when Howard said he would be leaving Illiopolis. There was discussion about payment of the $552 note, and Howard said he would not make any more payments.

Sellers had previously had an almost identical contract with a William Lyons. Lyons had died and Mrs. Lyons could not make the payments. When sellers sold to buyers, he requested Mrs. Lyons to move. She moved and buyers took possession. There was no written cancellation of the Lyons contract, and no suit filed to cancel it.

Buyer, James Howard, without giving a date, said they discussed the furnishing of an abstract of title or title insurance. Buyer says about a week before he moved, he, James Howard, called Tolbird at a used car lot. He said: "I was disturbed because I had heard that Mrs. Lyons said she still owned the house and that I really didn't own it. She still lived in the community and she still had a deed or something to the house." Buyer also testified: "He had previously told me that the abstract would be furnished and deed put in escrow with the bank, and in this phone conversation he promised to come over the Saturday following whenever this conversation was." He also testified: "On July 10th, I told Tolbird I would make one payment until I got the papers straightened out. I would then have a lawyer go over and make sure everything was all right. I couldn't go on with the agreement until I knew I had a clear title and this is when he said he would escrow a deed at the bank."

Buyer, James Howard, had resigned his job as school superintendent on August 6, 1966. He applied for a job in Normal and other places. Buyer looked at a house in

Normal in the first or second week in August, and bought that house sometime between the 15th and 26th.

Buyer further testified that there was never a discussion using the term, abstract of title. The one produced in court was the first one he had ever seen. Neither on the day the contract was signed, nor subsequently in his conversation with seller, was the term abstract of title used. Buyer never asked seller to furnish an abstract of title in those words.

Buyer further testified that he told Tolbird he would have to furnish clear title. He testified that Tolbird told him he would furnish him evidence of clear title.

As to the August 15, 1966, telephone conversation, buyer further testified:

> "The subjects of discussion were the $552.00, the subject of Mr. Tolbird coming over the following Saturday and the subject of my misgivings about clear title and the discussion of the topic of my moving. I asked why I had not received the papers clearing title, of the evidence that the deed had been put in escrow and the contract brought back from his wife having signed it where it had been changed and then I think I told him that I was going to move. . . . He said I'll be over Saturday and we will discuss it. He did not come the following Saturday."

Seller denies any conversation about furnishing evidence of title.

From the foregoing we find that nothing in the contract furnishes an exact date when evidence of title was to be furnished. In Illinois Law and Practice, Vendor & Purchaser, Vol 35, page 516, § 98, it is stated:

> "In the absence of an agreement to the contrary, the vendor under an executory contract for the sale of real estate must have good title as called for by the contract as of the date and time when per-

247

formance by him is required by the contract, *and if any lack of title in the vendor or defects in such title exist it is sufficient if such lack of title or defects therein are removed at the time for conveyance.* If time is of the essence of the contract, *the title must be perfected at the time fixed for performance by the execution and delivery of the deed* unless equities exist which excuse a strict and seasonable performance.

"Where, however, no time is fixed in the contract for performance, or where time is not of the essence of the contract, the vendor ordinarily is entitled to a reasonable time in which to perfect his title, and he must perfect his title within a reasonable time." (Emphasis supplied.)

The foregoing is consistent with the holding in Gray v. Meek, 199 Ill 136, 139, 64 NE 1020, which is that where no time for delivery of a deed is fixed in an installment contract, it need not be ready until the last payment is made, and its unavailability is not a defense to payment of installments due. In Monsen v. Stevens, 56 Ill 335, 337, the court held that the fact that vendor did not have title at a time when he was not obligated to convey, was not a violation of a contract to sell real estate. On page 336, the court said:

"By the terms of the contract no conveyance was to be made until there was full payment. The last payment would not have matured until in October, 1872. The vendor and his grantee had, during the life of the contract, the right to acquire the title. Even upon tender of the purchase money vendee had no right to a conveyance at the time of commencement of this suit. The whole purchase money was not due. The time for performance had not arrived. The vendor, therefore, was under no legal obligation to fulfill his covenants before the time fixed by the contract."

248

In Vulcan Corp. v. Cobden Mach. Works, 336 Ill App 394, 399, 84 NE2d 173, it was held that the fact that seller had only a contract for deed to the premises presented no defense to performance by the buyer for the reason that seller could acquire title at any time payment was tendered. Likewise, in Roeth v. Boehm, 331 Ill App 410, 73 NE2d 651, the existence of an unpaid mortgage did not render title unmerchantable so as to justify recission of a contract where it appeared the mortgage could be paid at any time.

 If it is not required in an installment contract, in the absence of a provision to the contrary, that vendor actually have merchantable title prior to the time for conveyance, we do not see how he can be compelled to furnish an abstract showing merchantable title prior to that time.

We are not here presented with the issue of the circumstances under which a buyer under a long installment contract might obtain an examination of an abstract prior to the time for performance in order to advise himself of a potential anticipatory breach of contract because no formal demand for an abstract has been made, and there has been no refusal to furnish one. It appears that the abstract has been at the mortgage company, and that payments were to be made to the mortgage company.

 Even an abstract brought to the date of the beginning of an installment contract would not absolutely assure one that the title would remain in this condition to the time of performance. It is enough, however, to say that the failure to furnish an abstract without a formal request therefor, would not, under the contract before us, be the basis for a recission by the buyer.

 Considering now Count I of the suit, which is upon a $552 judgment note which has been referred to as a "down payment," we find that the defense of failure of consideration is available. The only contract to which the "down payment" or any "payment" between these

249

parties can have any reference is the real estate contract. This contract clearly recites:

"2. That, it is mutually agreed between the parties that the *total purchase price* to be paid by Buyers to Sellers shall be the sum of Twenty Thousand, Four Hundred Sixty-nine and 78/100 Dollars ($20,-469.78), with interest on the unpaid balance from this date at the rate of six percent (6%) per annum, payable in the following manner: The sum of One Hundred Eighty-Four and no/100 Dollars ($184.00) shall be paid to Sellers, or their designees, on July 15, 1966, and a like sum of One Hundred Eighty-Four and no/100 Dollars ($184.00) shall be paid on the 15th day of each month thereafter until the balance of the entire purchase price, plus interest, has been paid in full; . . . ." (Emphasis supplied.)

We hold that the promissory note, which is not referred to in the contract for sale, could neither increase the total purchase price nor change the schedule of payments.

The judgment of the trial court should be affirmed as to Count I, and reversed as to Count II. The cause should be remanded to the Circuit Court with directions to enter judgment for the defendants as to Count I, and for the plaintiffs as to Count II. Leave should be given plaintiffs to amend Count II to include installments due up to the date of the judgment, and judgment should be entered for the installments due up to this date. In allocating the installments between principal and interest, interest should be computed to the date of actual payment.

Affirmed in part, reversed in part, and remanded with directions.

SMITH, P. J. and CRAVEN, J., concur.