J. M. GANDHI, Plaintiff-Appellant, *v.* JAMES C. BRECKON *et al.*, Defendants-Appellees.

Third District    No. 80-134

Opinion filed January 14, 1981.

Dr. J. M. Gandhi, of Western Illinois University, of Macomb, for appellant, *pro se.*

C. Don Weston, of Macomb, for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

This is an appeal by the plaintiff, J. M. Gandhi, from a judgment of

the circuit court of McDonough County in favor of the defendants, James C. Breckon and Phyllis J. Breckon. We affirm.

On September 29, 1976, plaintiff-buyer Gandhi and defendant-seller James Breckon executed an installment contract for the sale of approximately 372 acres of land located in McDonough County, Illinois. The contract provided, in pertinent part, that:

"The said buyer convenants and agrees to pay to the seller as a total price the sum of One Hundred Ninety-Nine Thousand Nine Hundred Fifty Dollars ($199,950.00) in the manner following: The sum of Five Hundred Dollars ($500.00) upon the execution of this contract, receipt of which is hereby acknowledged, and the balance of One Hundred Nine-Nine Thousand Four Hundred Fifty Dollars ($199,450.00), *without interest* shall be paid as follows:

a. The sum of Fourteen Thousand Five Hundred Dollars ($14,500.00) to be paid on or about the 1st day of October, 1976.

b. The further sum of Forty-Two Thousand Nine Hundred Eighty-Five and Fifty one hundredths Dollars ($42,985.50) shall be paid on or before the 27th day of December, 1976.

c. The balance of One Hundred Forty-One Thousand Nine Hundred Sixty-Four and Fifty/one hundredths Dollars ($141,864.50), less the estimated taxes for the year 1976, due and payable in 1977, said estimate to be based upon the most recent information available, shall be paid on or before the 1st day of March, 1977." (Emphasis added.)

The defendant seller placed a great deal of importance upon a timely payment of the $42,985.50 installment because under the Federal income tax laws then in effect receipt of a substantial sum but less that 30% of the total purchase price in 1976 would result in a considerable tax saving to him (see IRC §453(b)(2)). Consequently, to insure a timely payment of this installment a forfeiture provision was included in the real estate sale contract which provided that "[i]t is expressly understood and agreed between the parties hereto that the failure of the buyer to make the payment due on December 27, 1976 to the seller shall result in a forfeiture of the buyer's right under the contract * * *." Also included in the contract was a provision that the seller was obligated to furnish to the buyer an abstract of title continued to October 15, 1976, showing merchantible title in the seller. The contract was silent, however, as to the time that such abstract was to be furnished.

Pursuant to the terms of the contract, the plaintiff paid $500 to defendant Breckon on the day the contract was executed, and $14,500 on October 1, 1976. However, the plaintiff was unable to secure long term financing in order to pay the installment due December 27. Consequently,

the plaintiff sought the financial assistance of the late J. Hughey Martin, a local realtor. Martin agreed to loan plaintiff the funds with which to pay the upcoming installment. The proposed loan contract provided that plaintiff was to repay the $42,985.50 loan, with 9% interest, by March 1, 1977. In addition plaintiff was to pay a $5,000 fee to Martin for his financial aid. The contract further provided that the plaintiff's interest in the real estate was to be assigned to Martin. The property was to be put up for sale by January 30, 1977, and Martin was to receive a 2% commission after his reimbursement for out-of-pocket expenses incurred in advertising and conducting the sale. In a first addendum to the loan contract Martin was given the right to bid upon the property at the sale. The addendum further provided that any amount derived from the sale less than $192,950 would be the plaintiff's loss.

A short time prior to December 27, the plaintiff discussed Martin's financing arrangement with his then attorney John Bisbee. Bisbee told the plaintiff that he felt the terms of the loan contract were undesirable, but also told Gandhi that payment of the installment due on December 27 would "obviate any legal difficulties." The Gandhi-Martin loan contract was never signed.

On December 27, the due date for the $42,985.50 payment, at plaintiff's direction Bisbee drafted and hand delivered a letter to C. Don Weston, defendant's attorney, in which it was stated that the plaintiff was reluctant to make any further payments under the installment sale contract until an abstract of title was received and examined. The installment due was accordingly not tendered to the defendant James Breckon. On December 30, 1976, the defendant informed the plaintiff that pursuant to the forfeiture clause in the contract the plaintiff's rights in the contract were forfeited. The forfeiture was based upon plaintiff's failure to make the December 27 installment. The $15,000 that Gandhi had previously paid to James Breckon was also forfeited. On February 11, 1977, James Breckon quitclaimed an undivided one half interest in the property to his wife, the defendant Phyllis Breckon.

Subsequently, the plaintiff instituted the instant equitable action seeking specific performance of the land sale contract by the defendant, or, in the alternative, rescission of the contract and restitution. At the bench trial, another of plaintiff's attorneys, Ellis E. Leighty, disclosed that defendant's attorney Weston assured him on December 10, 1976, that the abstract would soon be finished and it should be received by him (Leighty) the following Monday, December 13. As of the date of the trial, however, no abstract had ever been furnished to the plaintiff. It was also disclosed at the trial that due to the plaintiff's failure to secure long term financing and his refusal to execute the Martin loan contract, he was financially unable to make the installment payment due on December 27.

On August 30, 1979, the circuit court of McDonough County entered judgment for the defendants, from which judgment the plaintiff now appeals.

The plaintiff raises three issues and posits a number of arguments on appeal, but as we see it the basic question in this case is whether defendant Breckon was obliged to furnish to the plaintiff an abstract of title before the plaintiff was obligated to tender the installment due on December 27. As previously stated, no specific time is stated in the Gandhi-Breckon contract for delivery of an abstract of title. All the contract provides is that an abstract of title, continued to October 15, 1976, is to be furnished to the plaintiff. The law regarding time of delivery which applies in the situation where the sale contract is silent as to the date the abstract of title is to be delivered is as follows:

> "Where the contract contains a stipulation obligating the vendor to furnish an abstract of his title to the vendee, but no particular time is fixed in which it is to be furnished, an implication arises that the abstract is to be furnished within a reasonable time in view of all the circumstances, and compliance by the vendor with this implication is obligatory. * * * The general rule is that the abstract shall be furnished for examination within a reasonable time before the date fixed for performance of the contract by the vendee, in order to give him an opportunity to examine it before performing the contract. The question as to what constitutes a reasonable time within which to furnish an abstract depends in part upon the circumstances and conditions of the transaction." (Annot., 52 A.L.R. 1460, 1481-82 (1928): *Accord*, 77 Am. Jur. 2d *Vendor and Purchaser* §257 (1975); *Jackson v. Conlin* (1893), 50 Ill. App. 538.)

At the trial, yet another of plaintiff's attorneys, John Simshauser, testified that the custom and practice in McDonough County regarding the time for delivery of abstracts in installment sales contracts is to deliver the abstract to the purchaser or his attorney a reasonable time prior to the time of final payment, and not prior to any intermediate payments. Simshauser's testimony on this point is uncontradicted.

■■ In light of his testimony, and in the absence of any evidence to the contrary, we agree with the trial court's determination that the defendant was not obligated to furnish an abstract of title to the plaintiff until a reasonable ·time prior to March 1, 1977, the date on which the final installment payment was to be made by plaintiff (See *Tolbird v. Howard* (1968), 101 Ill. App. 2d 236, 242 N.E.2d 468, *aff'd in part and rev'd in part* (1969), 43 Ill. 2d 357, 253 N.E.2d 444.) The plaintiff's argument that the delivery of an abstract of title was a condition precedent to the December 27 payment is unsupported by the terms of the contract, and amounts to

a unilateral attempt to vary the terms of a fully executed instrument in the absence of any agreement, either written or parol, to modify.

■■ Although we hold that under the facts of this case the plaintiff could not predicate payment of the December 27 installment upon defendant's delivery of an abstract on or before that date, in so doing we have not been oblivious to the effect that attorney Weston's assurances that an abstract would be delivered to plaintiff's attorney Leighty by Monday, December 13, 1976, may have had upon plaintiff's duty to perform his part of the contract. However, we do not wish to comment on the possibility of success of an estoppel argument based upon Weston's assurances. Such an argument was not presented on appeal, and we decline to act as counsel for those who practice before us. See *Bourke v. Kissack* (1909), 242 Ill. 233, 89 N.E. 990.

Even if the defendant had furnished the plaintiff with an abstract of title prior to the December 27 payment, it is clear from the record that the result, nonpayment of the installment, would have been the same. As the trial court aptly pointed out, the plaintiff simply did not have the funds available to make the December 27 payment. He himself testified that he was unable to secure long-term financing for his purchase, and the only short-term financing which was available he refused. Certainly, plaintiff's decision not to accept the terms of Mr. Martin's loan is understandable, but his inability to obtain financing does not excuse his duty under the contract with James Breckon to pay $42,985.50 on or before December 27, 1976. The terms of the contract with Breckon could not be more clear. The plaintiff had to make the December 27 installment or forfeit all of his rights under the contract. We are aware that the plaintiff now claims he has the funds with which to pay the defendants, but the fact remains that on December 27, 1976, no such funds were paid to the defendant. The plaintiff's ability to pay now does not cure his inability to pay then. The plaintiff's inability to make the December 27 installment based upon his failure to secure financing made forfeiture inevitable.

■ For these reasons, we concur with the lower court's conclusion that failure of the plaintiff to pay the December 27 installment, which cannot be excused by defendant's failure to furnish an abstract of title by that date, put the plaintiff in default pursuant to the terms of the installment sale contract. Accordingly, specific performance is not available to him as an equitable remedy, and the lower court was not in error in so finding.

The judgment of the circuit court of McDonough County is affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.